William Shlensky, on Behalf of and as a Representative of Chicago National League Ball Club (Inc.), Plaintiff-Appellant, v. Philip K. Wrigley, et al., and Chicago National League Ball Club (Inc.), Defendants-Appellees.

Gen. No. 51,750.

First District, Third Division.

April 25, 1968.

Milton I. Shadur and Neil H. Adelman, of Chicago (Robert Plotkin, Ronald S. Miller, David J. Krupp, and Abner J. Mikva, of counsel), for appellant.

Sidley, Austin, Burgess & Smith, and Arthur Morse, of Chicago (James E. S. Baker, Edward Slovick, and Alexander C. Allison, of counsel), and Samuel W. Block and Kenneth S. Brown, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellees.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a dismissal of plaintiff's amended complaint on motion of the defendants. The action was a stockholders' derivative suit against the directors for negligence and mismanagement. The corporation was also made a defendant. Plaintiff sought damages

and an order that defendants cause the installation of lights in Wrigley Field and the scheduling of night baseball games.

Plaintiff is a minority stockholder of defendant corporation, Chicago National League Ball Club (Inc.), a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant corporation owns and operates the major league professional baseball team known as the Chicago Cubs. The corporation also engages in the operation of Wrigley Field, the Cubs' home park, the concessionaire sales during Cubs' home games, television and radio broadcasts of Cubs' home games, the leasing of the field for football games and other events and receives its share, as visiting team, of admission moneys from games played in other National League stadia. The individual defendants are directors of the Cubs and have served for varying periods of years. Defendant Philip K. Wrigley is also president of the corporation and owner of approximately 80% of the stock therein.

Plaintiff alleges that since night baseball was first played in 1935 nineteen of the twenty major league teams have scheduled night games. In 1966, out of a total of 1,620 games in the major leagues, 932 were played at night. Plaintiff alleges that every member of the major leagues, other than the Cubs, scheduled substantially all of its home games in 1966 at night, exclusive of opening days, Saturdays, Sundays, holidays and days prohibited by league rules. Allegedly this has been done for the specific purpose of maximizing attendance and thereby maximizing revenue and income.

The Cubs, in the years 1961–65, sustained operating losses from its direct baseball operations. Plaintiff attributes those losses to inadequate attendance at Cubs' home games. He concludes that if the directors continue to refuse to install lights at Wrigley Field and schedule

night baseball games, the Cubs will continue to sustain comparable losses and its financial condition will continue to deteriorate.

Plaintiff alleges that, except for the year 1963, attendance at Cubs' home games has been substantially below that at their road games, many of which were played at night.

Plaintiff compares attendance at Cubs' games with that of the Chicago White Sox, an American League club, whose weekday games were generally played at night. The weekend attendance figures for the two teams were similar; however, the White Sox week-night games drew many more patrons than did the Cubs' weekday games.

Plaintiff alleges that the funds for the installation of lights can be readily obtained through financing and the cost of installation would be far more than offset and recaptured by increased revenues and incomes resulting from the increased attendance.

Plaintiff further alleges that defendant Wrigley has refused to install lights, not because of interest in the welfare of the corporation but because of his personal opinions "that baseball is a 'daytime sport' and that the installation of lights and night baseball games will have a deteriorating effect upon the surrounding neighborhood." It is alleged that he has admitted that he is not interested in whether the Cubs would benefit financially from such action because of his concern for the neighborhood, and that he would be willing for the team to play night games if a new stadium were built in Chicago.

Plaintiff alleges that the other defendant directors, with full knowledge of the foregoing matters, have acquiesced in the policy laid down by Wrigley and have permitted him to dominate the board of directors in matters involving the installation of lights and scheduling of night games, even though they knew he was not motivated

by a good faith concern as to the best interests of defendant corporation, but solely by his personal views set forth above. It is charged that the directors are acting for a reason or reasons contrary and wholly unrelated to the business interests of the corporation; that such arbitrary and capricious acts constitute mismanagement and waste of corporate assets, and that the directors have been negligent in failing to exercise reasonable care and prudence in the management of the corporate affairs.

The question on appeal is whether plaintiff's amended complaint states a cause of action. It is plaintiff's position that fraud, illegality and conflict of interest are not the only bases for a stockholder's derivative action against the directors. Contrariwise, defendants argue that the courts will not step in and interfere with honest business judgment of the directors unless there is a showing of fraud, illegality or conflict of interest.

The cases in this area are numerous and each differs from the others on a factual basis. However, the courts have pronounced certain ground rules which appear in all cases and which are then applied to the given factual situation. The court in Wheeler v. The Pullman Iron & Steel Co., 143 Ill 197, 207, 32 NE 420 said:

> "It is, however, fundamental in the law of corporations, that the majority of its stockholders shall control the policy of the corporation, and regulate and govern the lawful exercise of its franchise and business. . . . Every one purchasing or subscribing for stock in a corporation impliedly agrees that he will be bound by the acts and proceedings done or sanctioned by a majority of the shareholders, or by the agents of the corporation duly chosen by such majority, within the scope of the powers conferred by the charter, and courts of equity will not undertake to control the policy or business methods of a corpo-

ration, although it may be seen that a wiser policy might be adopted and the business more successful if other methods were pursued. The majority of shares of its stock, or the agents by the holders thereof lawfully chosen, must be permitted to control the business of the corporation in their discretion, when not in violation of its charter or some public law, or corruptly and fraudulently subversive of the rights and interests of the corporation or of a shareholder."

The standards set in Delaware are also clearly stated in the cases. In Davis v. Louisville Gas & Electric Co., 6 NJ Misc 706, 142 A 654, a minority shareholder sought to have the directors enjoined from amending the certificate of incorporation. The court said on page 659:

"We have then a conflict in view between the responsible managers of a corporation and an overwhelming majority of its stockholders on the one hand and a dissenting minority on the other—a conflict touching matters of business policy, such as has occasioned innumerable applications to courts to intervene and determine which of the two conflicting views should prevail. The response which courts make to such applications is that it is not their function to resolve for corporations questions of policy and business management. The directors are chosen to pass upon such questions and their judgment *unless shown to be tainted with fraud* is accepted as final. The judgment of the directors of corporations enjoys the benefit of a presumption that it was formed in good faith and was designed to promote the best interests of the corporation they serve." (Emphasis supplied.)

Similarly, the court in Toebelman v. Missouri-Kansas Pipe Line Co., 41 F Supp 334, said at page 339:

178

"The general legal principle involved is familiar. Citation of authorities is of limited value because the facts of each case differ so widely. Reference may be made to the statement of the rule in Helfman v. American Light & Traction Company, 121 NJ Eq 1, 187 A 540, 550, in which the Court stated the law as follows: 'In a purely business corporation . . . the authority of the directors in the conduct of the business of the corporation must be regarded as absolute when they act within the law, and the court is without authority to substitute its judgment for that of the directors.' "

Plaintiff argues that the allegations of his amended complaint are sufficient to set forth a cause of action under the principles set out in Dodge v. Ford Motor Co., 204 Mich 459, 170 NW 668. In that case plaintiff, owner of about 10% of the outstanding stock, brought suit against the directors seeking payment of additional dividends and the enjoining of further business expansion. In ruling on the request for dividends the court indicated that the motives of Ford in keeping so much money in the corporation for expansion and security were to benefit the public generally and spread the profits out by means of more jobs, etc. The court felt that these were not only far from related to the good of the stockholders, but amounted to a change in the ends of the corporation and that this was not a purpose contemplated or allowed by the corporate charter. The court relied on language found in Hunter v. Roberts, Throp & Co., 83 Mich 63, 47 NW 131, 134, wherein it was said:

"Courts of equity will not interfere in the management of the directors unless it is clearly made to appear that they are guilty of fraud or misappropriation of the corporate funds, or refuse to declare a dividend when the corporation has a surplus of net profits which it can, without detriment to its busi-

179

ness, divide among its stockholders, and when a refusal to do so would amount to such an abuse of discretion as would constitute a fraud or breach of that good faith which they are bound to exercise toward the stockholders."

From the authority relied upon in that case it is clear that the court felt that there must be fraud or a breach of that good faith which directors are bound to exercise toward the stockholders in order to justify the courts entering into the internal affairs of corporations. This is made clear when the court refused to interfere with the directors' decision to expand the business. The following appears on page 684:

"We are not, however, persuaded that we should interfere with the proposed expansion of the business of the Ford Motor Company. In view of the fact that the selling price of products may be increased at any time, the ultimate results of the larger business cannot be certainly estimated. *The judges are not business experts.* It is recognized that plans must often be made for a long future, for expected competition, for a continuing as well as an immediately profitable venture. . . . We are not satisfied that the alleged motives of the directors, in so far as they are reflected in the conduct of the business, menace the interests of the shareholders." (Emphasis supplied.)

Plaintiff in the instant case argues that the directors are acting for reasons unrelated to the financial interest and welfare of the Cubs. However, we are not satisfied that the motives assigned to Philip K. Wrigley, and through him to the other directors, are contrary to the best interests of the corporation and the stockholders. For example, it appears to us that the effect on the surrounding neighborhood might well be considered by a

180

director who was considering the patrons who would or would not attend the games if the park were in a poor neighborhood. Furthermore, the long run interest of the corporation in its property value at Wrigley Field might demand all efforts to keep the neighborhood from deteriorating. By these thoughts we do not mean to say that we have decided that the decision of the directors was a correct one. That is beyond our jurisdiction and ability. We are merely saying that the decision is one properly before directors and the motives alleged in the amended complaint showed no fraud, illegality or conflict of interest in their making of that decision.

■■ While all the courts do not insist that one or more of the three elements must be present for a stockholder's derivative action to lie, nevertheless we feel that unless the conduct of the defendants at least borders on one of the elements, the courts should not interfere. The trial court in the instant case acted properly in dismissing plaintiff's amended complaint.

■■ We feel that plaintiff's amended complaint was also defective in failing to allege damage to the corporation. The well pleaded facts must be taken as true for the purpose of judging the sufficiency of the amended complaint. (Highway Ins. Co. v. Korman, 40 Ill App2d 439, 442, 190 NE2d 124.) However, one need not accept conclusions drawn by the pleader. (Nagel v. Northern Illinois Gas Co., 12 Ill App2d 413, 420, 139 NE2d 810.) Furthermore, pleadings will be construed most strongly against the pleader prior to a verdict or judgment on the merits. New Amsterdam Cas. Co. v. Gerin, 9 Ill App2d 545, 133 NE2d 723.

There is no allegation that the night games played by the other nineteen teams enhanced their financial position or that the profits, if any, of those teams were directly related to the number of night games scheduled. There is an allegation that the installation of lights and

scheduling of night games in Wrigley Field would have resulted in large amounts of additional revenues and incomes from increased attendance and related sources of income. Further, the cost of installation of lights, funds for which are allegedly readily available by financing, would be more than offset and recaptured by increased revenues. However, no allegation is made that there will be a net benefit to the corporation from such action, considering all increased costs.

Plaintiff claims that the losses of defendant corporation are due to poor attendance at home games. However, it appears from the amended complaint, taken as a whole, that factors other than attendance affect the net earnings or losses. For example, in 1962, attendance at home and road games decreased appreciably as compared with 1961, and yet the loss from direct baseball operation and of the whole corporation was considerably less.

The record shows that plaintiff did not feel he could allege that the increased revenues would be sufficient to cure the corporate deficit. The only cost plaintiff was at all concerned with was that of installation of lights. No mention was made of operation and maintenance of the lights or other possible increases in operating costs of night games and we cannot speculate as to what other factors might influence the increase or decrease of profits if the Cubs were to play night home games.

█ Nagel v. Northern Illinois Gas Co., supra, was a stockholder's derivative action for the rescission of a contract of the corporation. The court said on page 421:

"They allege that by these transactions 'Edison gave to Northern assets, rights and benefits of a value in excess of $5,000,000' and received in return, under the Final Separation Contract, assets, rights and benefits of a net value of less than $50,000. These allegations are mere conclusions of the pleader and not an averment of the fact of gross inadequacy of

consideration, unless warranted by the provisions of the contract and the well pleaded facts in the amended complaint consistent with the contract."

Similarly, in the instant case, plaintiff's allegation that the minority stockholders and the corporation have been seriously and irreparably damaged by the wrongful conduct of the defendant directors is a mere conclusion and not based on well pleaded facts in the amended complaint.

■ ■ Finally, we do not agree with plaintiff's contention that failure to follow the example of the other major league clubs in scheduling night games constituted negligence. Plaintiff made no allegation that these teams' night schedules were profitable or that the purpose for which night baseball had been undertaken was fulfilled. Furthermore, it cannot be said that directors, even those of corporations that are losing money, must follow the lead of the other corporations in the field. Directors are elected for their business capabilities and judgment and the courts cannot require them to forego their judgment because of the decisions of directors of other companies. Courts may not decide these questions in the absence of a clear showing of dereliction of duty on the part of the specific directors and mere failure to "follow the crowd" is not such a dereliction.

For the foregoing reasons the order of dismissal entered by the trial court is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.