June **HIRSHFIELD**, formerly known as June H. Briskin, Plaintiff-Appellant,

v.

Lester I. **BRISKIN** et al., Defendants-Appellees.

No. 18301.

United States Court of Appeals, Seventh Circuit.

Aug. 24, 1971.

Rehearing Denied Sept. 28, 1971.

---

Harry H. Ruskin, Gilbert A. Siegel, Martin L. Bogot, Chicago, Ill., for plaintiff-appellant; Ruskin & Rosenbaum, Chicago, Ill., of counsel.

Paul Freeman, Russell J. Topper, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD and STEVENS, Circuit Judges, and GRANT, District Judge.[1]

FAIRCHILD, Circuit Judge.

This is a shareholder's derivative suit.[2] The amended complaint contains eight counts. The district court granted defendants' motion to dismiss Counts I, II, and III for failure to state a claim. The order contained the expressions requisite for finality of a judgment on less than all the claims under Rule 54(b), F.R.Civ.P. Plaintiff appealed from the judgment accordingly entered.

Plaintiff June Hirshfield was the widow of Moray Briskin. She owns 10,000 shares of common stock of defendant Briskin Manufacturing Company (Briskin), acquired from Moray's estate. The individual defendants are Moray's brother, Lester, his sister Alice, their mother, Anna, Lester's wife, Sophye, and Alice's husband, Elmer Kaplan. The four directors of Briskin were Lester, Elmer, Sophye, and Anna. Except for plaintiff's shares and 10,000 shares held by the guardian of her son, all the 115,000 outstanding shares are owned by Lester and Elmer and their families.

Each of the three counts predicates liability upon certain loans or extensions of credit by Briskin to Century Vitreous Enamel Co. (Century), and the loss to Briskin resulting from Century's default. Count I is based on a theory of constructive fraud. Count II adds an averment of wrongful purpose. Count III adds an averment of negligence.

Counts I and II were dismissed for failure to set forth facts showing mismanagement of corporate funds with sufficient particularity, especially in view of averments in the alternative, hereafter referred to. Count III was dismissed on the theory that a claim of this type may not, in Illinois, be predicated upon negligence.

According to plaintiff's averments in Count I, the following facts appear:

Lester and Elmer were the principal executive officers of Briskin. For many years Briskin owned 50% of the outstanding stock of Century. In January, 1965 Lester and Elmer acquired the remaining 50% for themselves. In 1965 and 1966 Briskin loaned funds or extended credit to Century, in part directly and in part through Coralware, another corporation controlled by Lester and Elmer. The aggregate amount is believed to be in excess of $230,000. At the time of the loans Century could not reasonably have been expected to be able to repay the loans and extensions of credit and Lester and Elmer so knew or in the exercise of ordinary diligence ought to have so known. In late 1966 or early 1967, Century ceased doing business, hopelessly insolvent, and as a result Coralware became insolvent. At that time Century was indebted to Coralware for more than $164,000, Coralware to Briskin, $300,000, and Century to Briskin, $60,000. As a result Briskin sustained a loss believed to be in excess of $350,000. Plaintiff does not know whether directors' resolutions were passed authorizing the loans, and avers in the alternative that Lester and Elmer caused such loans or extensions without authorization and thus misappropriated the funds of Briskin, or that, if resolutions were adopted, all directors voting for them are liable.

■ ■ We conclude that the facts as to the conflict of interest and the resulting loss are alleged positively and with sufficient particularity. At least two of the defendants, while in a fiduciary capacity with respect to Briskin, caused Briskin to engage in transactions in which their personal interests were at least in part in conflict with their fiduciary duties to Briskin. Although a bail-out of Century would have benefited Briskin as well as Lester and Elmer, they risked only the funds of Briskin.

1. The Honorable Robert A. Grant, Chief Judge, Northern District of Indiana, is sitting by designation.

2. Jurisdiction is founded on diversity. Illinois law controls the substantive issues.

Under Illinois law, the existence of the conflict of interest is sufficient to impose liability for damages unless defendants succeed in "overcoming the presumption against the validity of the transaction by showing its fairness." [3]

Appellees rely on this court's decision in Duane v. Altenburg (7th Cir., 1962), 297 F.2d 515, 519, where we held that the complaint did not make the strong showing required in this area by Illinois law nor fulfill the particularity required by Rule 9(b), F.R.C.P. in averments of fraud. In *Duane*, however, virtually every allegation was made on information and belief, without averring supporting facts, and regardless of whether or not the matter was peculiarly within the adverse party's knowledge. In the instant case the facts of the conflict of interest, and the loss resulting from the loans are clearly stated. All averments are positive, as if made on knowledge, except for certain dates and amounts which are alleged to be within the knowledge of Lester and Elmer and as to which approximations are given.

■ Appellees challenge the presence of averments in the alternative. They contend that when Rule 9(b) requires statement with particularity, Rule 8(e) (2) F.R.C.P., permitting two or more statements alternatively or hypothetically is wholly excluded from application. We think, however, that there must be reasonable accommodation between the two rules.[4] One is not always required to elect a single theory of the factual situation where fraud is claimed, and, at least where each of two alternative statements independently satisfies the particularity requirement of Rule 9(b), the pleading does not violate that rule

solely because alternatives have been stated.[5]

Count II incorporates all the averments of Count I and adds only a claim of intent, *i. e.*, that defendants' acts were committed "(a) for the purpose of diverting assets of Briskin to the personal benefit of Lester and Elmer and of Century, or (b) for the purpose of oppressing and harassing the Plaintiff and the other aggrieved stockholders of Briskin, or (c) for both of said purposes; and such acts were committed in pursuance of a scheme or design to operate Briskin for the personal benefit of Lester and Elmer and to the detriment of Plaintiff and such other aggrieved shareholders."

Count III incorporates all the averments of Count I and adds only an allegation that in making the loans or extensions of credit defendants "failed to exercise reasonable care, skill and diligence in the performance of their duties as officers, or directors, or both, of Briskin, as was their duty, but on the contrary, acted negligently, recklessly and with gross disregard for the interests of Briskin."

■ Since Counts II and III incorporate all averments of Count I, each necessarily states as good a claim as Count I, and in reversing as to II and III we mean no more than that. The averments of wrongful purpose in Count II and of negligence in Count III are, in this complaint, so interdependent with the averments of conflict of interest in Count I that it is fruitless on this appeal to decide whether the averment of purpose in Count II would be formally sufficient to claim fraudulent intent if that were a necessary element of the claim [6] or whether the law of Illinois would recognize negligence in management (char-

---

3. Schlensky v. South Parkway Building Corporation (1960), 19 Ill.2d 268, 166 N.E.2d 793, 800. See Winger v. Chicago City Bank & Trust Co. (1946), 394 Ill. 94, 67 N.E.2d 265, 275–280.

4. 2A Moore's Federal Practice, 2d ed., ¶ 9.03, p. 1929–30.

5. See Michael v. Clark Equipment Company (2d Cir., 1967), 380 F.2d 351; Heit

v. Weitzen (2d Cir., 1968), 402 F.2d 909; Merchant v. Davies, (1957), 100 U.S. App.D.C. 258, 244 F.2d 347, 348.

6. See Duane v. Altenburg, *supra*; Robison v. Caster (7th Cir., 1966), 356 F.2d 924, 925 and Di Vito v. Fidelity and Deposit Company of Maryland (7th Cir., 1966), 361 F.2d 936, 939.

acterized by the pleader as recklessness and gross disregard for corporate interests) as a predicate for a shareholder's derivative action.[7]

Rule 23.1, F.R.C.P. requires that the complaint in a derivative action be verified. The original complaint was verified by an affidavit of plaintiff, the amended complaint by affidavit of one of her attorneys. The latter stated that he has knowledge of certain of the facts stated in the complaint and such facts are true and correct; that he has information respecting all other facts stated and that with respect to all such facts he believes them to be true and they are true to the best of his information and belief. The objection, raised for the first time on appeal, is that there is nothing which identifies the statements as to which he has knowledge nor those as to which he has information and belief. No federal rule or decision, however, requires such identification.[8]

Defendants also challenge plaintiff's right to bring the action because she did not own the stock at the time of the transactions complained of. The complaint states that at the time of the transactions the estate of Moray Briskin held the shares, and that they devolved upon her by operation of law. On its face the complaint complies with Rule 23.1, F.R.C.P. requiring an allegation "that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law."

Going beyond the face of the complaint, however, it is conceded that after Moray's death the ownership of the shares was in dispute, that there was litigation between the executor and Lester, and that the matter was settled by agreement, upon which a decree was based. The decree recites that the executor claimed 40,000 shares standing in the name of Moray while Lester claimed them as trustee of a living trust; that plaintiff (here) had renounced the will and is entitled to statutory rights; that if the executor prevailed, plaintiff (here) would be entitled to one-third of 40,000 shares, subject to obligations of the estate; and that by agreement she reduced her portion to 10,000 shares. Various other matters were also settled by agreement.

The transfer to her of the shares was not in all respects solely and perfectly a result of the operation of law, and some element of bargain or consent was present. Yet we think her acquisition sufficiently approximated a devolution by operation of law and did not present the sort of occurrences involving speculation, champerty, or collusion to confer jurisdiction, which Rule 23.1 seeks to preclude.[9]

The judgment is reversed and the cause remanded for further proceedings.

---

7. See Shlensky v. Wrigley (1968), 95 Ill. App.2d 173, 237 N.E.2d 776, 780; 19 Am.Jur.2d, Corporations § 534, p. 72.

8. See Surowitz v. Hilton Hotels Corp. (1966), 383 U.S. 363, 365, 86 S.Ct. 845, 15 L.Ed.2d 807.

9. See 3B Moore's Federal Practice ¶ 23.1.15 [2].