MARY JEAN LOWER, Plaintiff-Appellant, *v.* LANARK MUTUAL FIRE INSURANCE COMPANY *et al.*, Defendants-Appellees.

Second District No. 82—489

Opinion filed April 20, 1983.—Rehearing denied May 31, 1983.

Richard A. Palmer, of Ward, Ward, Murray, Pace & Johnson, of Sterling, for appellant.

Bernard P. Reese, Jr., of Reese, Reese & Bagley, of Rockford, for appellees.

JUSTICE VAN DEUSEN delivered the opinion of the court:

This is a shareholders' derivative suit for recovery of certain service fees, which were allegedly misappropriated and converted by defendant secretary-treasurer (also a director) of the nominal defendant insurance company, plus interest and attorney fees, from the secretary-treasurer/director and from the other defendant directors. The trial court granted summary judgments in favor of all defendants. Plaintiff appeals.

The facts giving rise to this appeal may be summarized as follows. From January 1, 1973, and for some years prior thereto, Lanark Mutual Fire Insurance Company (hereinafter Lanark Mutual) had reinsurance agreements with two other insurance companies, whereby Lanark Mutual was to receive certain service fees based upon the amount of insurance reinsured. From 1973 through 1977 Lanark Mutual was to receive a total of $25,022.60 in amounts which were periodically paid by check payable to Lanark Mutual. Alma Dollinger, secretary-treasurer and a director of Lanark Mutual, endorsed the checks and deposited the funds in her own separate account for her own use.

The disposition of these service fees was apparently called into question in the fall of 1978 and was the subject of an investigation by a special committee appointed by the president of Lanark Mutual, Rex B. Lower, who was a director since 1963, president for seven years up to 1978, and the husband of Mary Jean Lower, the plaintiff. The investigation culminated in a special board meeting held December 16, 1978, in which Dollinger did not participate. At that meeting, the directors unanimously voted to have the 1978 service fees deposited in the Lanark Mutual bank account, and they voted to have Dollinger keep all service fees received prior to January 1, 1978, if she would return the service fees received after January 1, 1978. President Lower cast the only dissenting vote. Then Dollinger was invited to join the meeting and asked if she would agree to the settlement agreement proposed by the board in the motion, and she agreed to the settlement.

At the annual meeting in January 1979, which was the first meeting of the policyholders following the December 16 board meeting, the issue of service fees was discussed and, on the motion of the plaintiff in this case, a shareholder directive or mandate was passed which required the board of directors to ascertain the amount of service fees

which Dollinger had received from 1973 to the date of the motion and, after ascertaining the amount, to recover it from Dollinger. At that time, the policyholders were not advised of any settlement or compromise. This lawsuit was filed on December 27, 1979.

The complaint alleged that plaintiff was a policyholder of Lanark Mutual, that defendant Lanark Mutual was an insurance company organized and operating pursuant to statute, and that the individual defendants were all directors of Lanark Mutual. The complaint further alleged that individual defendant Alma Dollinger was the secretary of Lanark Mutual with sole charge, control and management of all of the company's business at its principal office. As such, she had the duty to receive, safely keep, and accurately account for Lanark Mutual's money and property coming under her control and to furnish, whenever required, true and correct statements pertaining thereto, "and to accurately account for and pay over to Lanark Mutual all money received by her in the course of her employment or in the management or direction of Lanark Mutual's business."

The complaint went on to allege that Dollinger's endorsement of the service fee checks and deposit in her own account for her own use was "fully without the authority or knowledge of Lanark Mutual, its officers or directors." Further, the complaint alleged that Dollinger wilfully and fraudulently caused Lanark Mutual's books and accounts to be "kept in a careless and fraudulent manner, for the purpose of covering up her irregular transactions." Thereby, according to plaintiff, considerable sums of money had been lost to Lanark Mutual and had not been accounted for nor paid to the company.

The only allegation made against the directors was that they responded to plaintiff's demand upon them to seek full accounting for said service fees by seeking and receiving restitution for those fees for the year 1978, "but in total disregard of their fiduciary duties to members of Lanark Mutual, wilfully neglected and refused to seek an accounting and recovery of the service fees" for the years 1973 through 1977. As relief, plaintiff sought a complete accounting of the service fees by Dollinger; a money judgment against Dollinger for Lanark Mutual's benefit in the amount of the fees plus interest; a money judgment against the defendant directors, jointly and severally, for the same amount; an order directing defendant directors to discharge the secretary; and plaintiff's reasonable attorney fees and costs.

At the annual meeting on January 22, 1980, the matter was once again discussed, and a resolution was introduced that approved and ratified the settlement of the reinsurance service fees question accord-

ing to the terms agreed upon at the December 16, 1978, board meeting. The resolution and a mutual release were approved by the policyholders attending with the only negative votes being cast by plaintiff and her husband. Thereafter, the resolution was passed at a board meeting on July 10, 1980, including a provision that the officers of the company were empowered to enter into a mutual release of all liability arising from the transactions in question.

Defendant directors had responded to plaintiff's complaint in two ways. First, it was and is their position that any funds retained by Dollinger as a result of the reinsurance agreements between Lanark Mutual and the two reinsurers were retained by Dollinger for services rendered to Lanark Mutual pursuant to a resolution of Lanark Mutual's board of directors as part of her reasonable compensation for services rendered. Second, the directors maintained that the entire controversy had been effectively settled and compromised by virtue of the December 16 agreement and that they had exercised their business judgment in good faith in settling and compromising the claim so that plaintiff's action was therefore barred under the business judgment rule.

On September 4, 1980, plaintiff filed a motion to disqualify defense counsel from representing both Lanark Mutual, the nominal defendant, and certain individual directors. She alleged that a potential and actual conflict existed between their respective interests. The motion was denied on September 22, 1980.

On February 23, 1981, all defendants except Dollinger, Lower and Haas moved for summary judgment on multiple grounds including the December 16 settlement agreement. Subsequently, the other defendants filed separate motions for summary judgment, also on multiple grounds including the December 16 settlement agreement. Plaintiff's memorandum in opposition to the motions for summary judgment stated *inter alia* that there were genuine issues of material fact as to whether any purported settlement or compromise was in good faith and that the defendant directors were seriously negligent in the manner in which they purportedly arrived at the December 16, 1978, compromise.

On March 23, 1982, the trial judge filed a memorandum opinion granting the motion for summary judgment filed by all defendants except Haas. Haas' motion for summary judgment was granted on May 25, 1982, for the same reasons set forth in the March 23 memorandum opinion. The principal question of law in this case, according to the trial judge, was the " 'Business Judgment Rule' and the effects of the actions of the Board of Directors and Shareholders upon the via-

bility of the Plaintiff's cause of action." He recited the undisputed facts regarding the service fees, the December 16 compromise, the January 1979 shareholders' directive to the board to pursue the matter and establish and collect the amount of fees received by Dollinger, and the shareholders' approval and subsequent board resolution in 1980 of the December 16 compromise. He observed that plaintiff did not allege that the directors personally gained from the compromise nor that they committed any illegal or fraudulent act, nor that they failed to do anything prior to plaintiff's demand but rather that, in the exercise of their business judgment, they disregarded their fiduciary duty.

The trial judge stated that plaintiff's complaint alleged no negligence or wrongdoing prior to the settlement agreement and accused the directors of disregarding their fiduciary duty by wilfully neglecting and refusing to seek an accounting from Dollinger for the years prior to 1978. Focusing on the December 16, 1978, meeting, the trial judge found that the directors recognized the problem, discussed the issues, calculated the effects upon the corporation, considered the nature and practice of this small farm mutual company and then offered a settlement. Finally, the trial court concluded, it was not alleged that the approving directors committed any wrong prior to their vote on December 16, 1978, or that they received some personal benefit from an illegal or fraudulent act.

Therefore, the trial court refused to challenge the decision made by the corporate officers and approved by the majority of the shareholders. The corporation, in whose name the plaintiff sought to recover, had already compromised and settled the cause of action, and the trial court granted all of the motions for summary judgment.

Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 57(3), now Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) In determining if there is a genuine issue as to a material fact, inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts, then a triable issue exists. (*Farmers Automobile Insurance Association v. Hamilton* (1975), 31 Ill. App. 3d 730, 732, *aff'd* (1976), 64 Ill. 2d 138.) The right to summary judgment must be clear beyond question, and when making this determination, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Baier v.*

*State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 920, *aff'd* (1977), 66 Ill. 2d 119.) Where doubt exists as to the right of the moving party to the entry of summary judgment, the wiser judicial policy is to permit resolution of the dispute by trial rather than by summary judgment. *Wegener v. Anna* (1973), 11 Ill. App. 3d 316, 320.

■ Here, the trial court granted the various motions for summary judgment because it found that the business judgment rule was applicable and that plaintiff's cause of action was thereby precluded. According to the business judgment rule, corporate directors, acting without corrupt motive and in good faith, will not be held liable for honest errors or mistakes of judgment (3A W. Fletcher, Cyclopedia of the Law of Private Corporations sec. 1039 (rev. perm. ed. 1975)), and a complaining shareholder's judgment shall not be substituted for that of the directors (*Swanson v. Traer* (7th Cir. 1957), 249 F.2d 854; see *Shlensky v. Wrigley* (1968), 95 Ill. App. 2d 173, 178). To come within the ambit of the rule, directors must be diligent and careful in performing the duties they have undertaken (3A W. Fletcher, Cyclopedia of the Law of Private Corporations sec. 1040 (rev. perm. ed. 1975)), and they must not act fraudulently, illegally or oppressively or in bad faith (see, *e.g., Ash v. International Business Machines, Inc.* (3d Cir. 1965), 353 F.2d 491, *cert. denied* (1966), 384 U.S. 927, 16 L. Ed. 2d 531, 86 S. Ct. 1446).

In order to grant summary judgment in this case, the trial court had to find that no genuine issues of material fact existed concerning the applicability of the business judgment rule. Plaintiff argues that the depositions, affidavits, and other pleadings on file raise substantial factual questions concerning the directors' actions, their good faith, and their compliance with their fiduciary duties of care and loyalty in their handling of the service fee controversy and that the trial court erred in applying the business judgment rule as a matter of law without determining these factual issues. The defendants argue, on the other hand, that the trial court properly determined that no genuine issue of material fact existed. Moreover, they claim the instant case to be a classic illustration of the importance of the summary judgment procedure in a vexatious and expensive unfounded shareholders' derivative suit (3A W. Fletcher, Cyclopedia of the Law of Private Corporations sec. 1041 (Cum. Supp. 1981)) that places the court in the untenable position of second-guessing basic directorial business decisions (Stegemoeller, *Derivative Actions and the Business Judgment Rule: Directorial Power to Compel Dismissal*, 69 Ill. Bar J. 338 (1981)).

In entering summary judgment in favor of the defendants and

against the plaintiff, the trial court carefully restricted its consideration of the directors' actions to the December 16, 1978, adoption of the compromise settlement of the service fee controversy. The trial judge looked to the plaintiff's complaint and found that the only allegation of wrongdoing involved the actions at that meeting. He pointed out that a different disposition might result if it had been alleged that those approving directors had committed some wrong prior to their vote on December 16, 1978, or that they had received some personal benefit from an illegal or fraudulent act.

Even assuming *arguendo* that the directors did vote for the settlement on December 16, 1978, because they felt it was in the best interest of the company, the record presents a serious question of fact as to whether the board had before it sufficient facts upon which to base an appropriate exercise of business judgment and therefore whether they acted in a diligent and careful manner in performing the duty they had undertaken on December 16, 1978. Plaintiff maintains that the defendant directors had been negligent and failed to exercise reasonable care in breach of their fiduciary duty as directors for some period prior to the December 16, 1978, meeting and thereafter wrongfully withheld material information from the shareholders, thereby gaining their approval of the settlement. According to plaintiff, their actions at and subsequent to the December 16, 1978, meeting, served, in effect, to cover up their prior wrongdoing and insulate them from the attendant liability at the expense of the company. The record is replete with depositions of the various directors wherein they admit to varying degrees of knowledge or ignorance about the service fee/compensation matter. An inference could be drawn from these facts that they had acted in good faith and had not breached their fiduciary responsibility so that their actions in exercising their judgment on December 16, 1978, were within the business judgment rule, or the contrary inference could be drawn.

■ The issue here is not whether the trier of fact would reach the conclusion urged by the plaintiff regarding the directors' good faith and compliance with fiduciary duties, but whether there is credible evidence in the record that would create a genuine issue of fact. The trial judge erred in restricting his consideration of the directors' actions solely to the December 16, 1978, board meeting because the directors' prior and subsequent actions, insofar as they would assist in determining and assessing the directors' actions at that meeting, are relevant and material. This broader review of the directors' actions indicates, at the least, that more than one inference could be drawn from the facts so that a genuine issue of fact was present. Therefore,

summary judgments in favor of the defendants were granted in error and must be reversed and the cause remanded for trial.

■ In a motion ordered taken with the case, defendants allege that the portions of plaintiff's brief dealing with the trial court's September 22, 1980, order denying her motion to disqualify counsel should be stricken because that order is not specifically mentioned in the notice of appeal and the issue therefore is not before this court. However, the order denying plaintiff's motion was not a final and appealable order. It was an interlocutory order which was not appealable under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) for two reasons. First, the order lacked the required express finding. Moreover, even with the special finding, the order would still not be appealable because it was not a final order; it did not, in fact, adjudicate and dispose of any of the parties' rights and liabilities concerning the entire controversy or some separate and definite part thereof. (*Bloom v. Landy* (1979), 72 Ill. App. 3d 383, 395-96.) This nonfinal order was made prior to the entry of the summary judgments, and the trial judge's action in denying plaintiff's motion is part of the record which is brought before us by the notice of appeal. See *Echo Lake Concerned Citizens Homeowners Association, Inc. v. Village of Lake Zurich* (1979), 68 Ill. App. 3d 219, 226 (special concurrence), citing *Hillmer v. Chicago Bank of Commerce* (1940), 375 Ill. 266, 272-73.

■ Plaintiff maintains that the same counsel should not represent both the corporation and the individual defendant directors because of a conflict between their respective interests so that counsel should be disqualified from representing the corporate defendant. We find that the adverse interests are apparent on the face of the complaint; the corporation will benefit from the suit if plaintiff prevails, but, because the suit alleges liability of the individual defendant directors, it is in their interest to defeat the claim. Even if no conflicts currently exist, the potential conflict cannot be ignored, and we must consider the serious hardship to the court and the parties that would ensue if new counsel is made necessary later because a conflict does arise in the course of trial. On balance, the corporation must obtain independent counsel. (*Cannon v. U.S. Acoustics Corp.* (N.D. Ill. 1975), 398 F. Supp. 209, 220, *rev'd and rem. on other grounds* (7th Cir. 1976), 532 F.2d 1118.) Defendant's attempt to distinguish *Cannon* on the grounds that the directors in this case did not achieve personal gain from their alleged wrongdoing is unpersuasive, since that fact does not in any way affect the adverse nature of their interest *vis-a-vis* that of the corporation.

Plaintiff's motion requested that the court appoint counsel to rep-

resent the defendant corporation. We disagree. The defendant corporation may select its own counsel even though some or all of the defendant directors may make the selection. Certainly new counsel will recognize the duty to represent solely the interests of the corporate entity. Should difficulties arise, the parties or counsel may apply to the court for additional relief. *Cannon v. U.S. Acoustics Corp.* (N.D. Ill. 1975), 398 F. Supp. 209, 220, *rev'd and rem. on other grounds* (7th Cir. 1976), 532 F.2d 1118.

For the reasons set forth above, the summary judgments in favor of the defendants are reversed, and the cause is remanded for trial. We further direct the trial court to order counsel for the defendants to withdraw as counsel for the corporate defendant, and the corporate defendant shall be granted reasonable time to retain new and independent counsel.

Reversed and remanded with directions.

HOPF and REINHARD, JJ., concur.