ZACK STAMP, Director of Insurance for the State of Illinois, as Liquidator of Pine Top Insurance Company, Plaintiff-Appellant, v. TOUCHE ROSS AND COMPANY *et al.*, Defendants (Ralph E. Batastini *et al.*, Defendants-Appellees).

First District (5th Division)   No. 1—89—3214

Opinion filed February 26, 1993.—Rehearing denied March 26, 1993.

Sidley & Austin, of Chicago (James R. Stinson, Richard J. O'Brien, Robert T. Biskup, and Garry L. Smith, of Office of the Special Deputy, of counsel), for appellant.

Fox & Grove, Chartered, of Chicago (Shayle P. Fox, William Henry Barrett, and Joshua D. Holleb, of counsel), for appellees.

PRESIDING JUSTICE GORDON delivered the opinion of the court:[1]

Plaintiff, as Director of Insurance for the State of Illinois and as liquidator of Pine Top Insurance Company (Pine Top), appeals from the trial court's dismissal under section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) of his action for negligence and breach of fiduciary duty against the defendants who were outside, *i.e.*, nonmanagement, directors of Pine Top.

---

[1]An earlier opinion was filed in this cause but has been withdrawn by order of this court on February 24, 1993. This revised opinion now stands in its place.

This action arises from the insolvency of the Pine Top Insurance Company, a stock property, casualty and fire insurance company organized under the laws of the State of Illinois. Plaintiff, as Director of Insurance for the State of Illinois and as liquidator for Pine Top, brought an action against, among others, the former officers and directors of Pine Top, alleging negligence and breach of fiduciary duty in the management of Pine Top. The defendants who are parties to this appeal are former Pine Top directors. None were officers of the company.

In count I of his complaint, plaintiff alleged that each of the defendants owed a fiduciary duty to Pine Top "to administer Pine Top's affairs for the common benefit of its policyholders, claimants, and other creditors, and to exercise his best care, skill, and judgment in the management of the corporate business solely in the interest of Pine Top." Specifically, plaintiff alleged that the defendants failed to discharge their fiduciary duty in that they:

"(a) Failed to develop and implement adequate underwriting procedures and controls;

(b) Consistently underpriced reinsurance and insurance business written by Pine Top;

(c) Failed to develop and implement adequate procedures and controls with respect to establishing reserves;

(d) Failed to increase reserves when loss experience demonstrated the inadequacy of reserves;

(e) Failed to set appropriate reserve liabilities for incurred but not reported claims:

(f) Understated the reserves that were necessary to satisfy claims and claims administration expenses in Pine Top's Annual Statements for the years ending December 31, 1981, 1982, 1983, 1984, and 1985;

(g) Failed to plan for or control a large premium growth, both through lack of management controls and inadequate staffing;

(h) Paid excessive commissions to managing general agents;

(i) Failed to oversee the performance of managing general agents and to monitor the quality of underwriting performed on Pine Top's behalf by such agents or the quality of reinsurance placed on Pine Top's behalf;

(j) Failed to develop and implement adequate procedures for the collection of balances due from managing general agents;

(k) Failed to require managing general agents to maintain adequate books and records;

(l) Failed to place Pine Top's ceded reinsurance book of business with financially secure reinsurers;

(m) Failed to develop and implement adequate procedures for the collection of balances due from reinsurers;

(n) Failed timely to draw down on letters of credit posted by re-insurers on Pine Top's behalf;

(o) Abdicated or wrongfully delegated to Pine Top's parent corporations (Greyhound and Whiteney) the management responsibilities of Pine Top and its subsidiaries Pine Top Services and Pine Top Syndicate;

(p) Failed to properly manage and supervise the affairs of Pine Top's subsidiaries, Pine Top Services and Pine Top Syndicate;

(q) Failed to keep correct and accurate books and records of accounts for Pine Top in violation of *** Ill. Rev. Stat. ch. 73, par. 745;

(r) Failed to report accurately the foregoing acts, omissions and circumstances to the Illinois Department, as required by Ill. Rev. Stat. ch. 73, par. 613 *et seq.*, and particularly Ill. Rev. Stat. ch. 73, pars. 745, 746, and 748; [and]

(s) Failed to accurately disclose Pine Top's true financial condition in its Annual Statements, as required by Ill. Rev. Stat. ch. 73, par. 748."

As a result of these breaches of fiduciary duties, the plaintiff alleged that damages in excess of $100 million were suffered.

In count II, entitled "Negligent Mismanagement," plaintiff alleged that each of the defendants owed a duty to Pine Top to use ordinary care in the discharge of his management duties. Plaintiff further alleged that this duty was breached by the acts enumerated above in regard to count I. Damages caused by defendants' negligence were again alleged to be in excess of $100 million.

Defendants Faber and Seith filed a motion to dismiss plaintiff's complaint against them pursuant to section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) Faber and Seith sought dismissal on two independent grounds. First, the duties allegedly owed by them were not, as a matter of law, duties owed by outside, *i.e.*, nonmanagement, directors to an Illinois insurance company. The second ground was that even if they owed such duties, the business judgment rule protected them from any liability.

In arguing their motion to dismiss before the trial court, defendants postured their arguments attacking the legal sufficiency of the complaint in the following manner:

"More significantly than what is pled in this case is what is not pled. There is no allegation of fraud, illegality, or self-dealing. It is nowhere in the complaint. What we have in reading from what has been pled and what has not been pled is that the inattention to details of operation are claimed to subject disinterested and honest directors to $150 million worth of liability.

* * *

We do not dispute the contention that Faber and Seith owed a fiduciary duty to Pine Top. At this point in the proceedings, we are bound by the complaint allegations that they were inattentive in those areas charged in the complaint."

The court, relying upon *Shlensky v. Wrigley* (1968), 95 Ill. App. 2d 173, 237 N.E.2d 776, held that since the complaint did not charge defendants with any wrongdoing bordering on fraud, illegality, or conflict of interest, the business judgment rule protected defendants from liability for honest errors or mistakes in judgment. Accordingly, the court granted the motion and dismissed Faber and Seith as defendants on October 2, 1989. In its dismissal, the trial court never addressed whether plaintiff's complaint was factually sufficient to establish a cause of action for negligence.

On November 6, 1989, six additional defendants, Ralph C. Batastini, W. Carroll Bumpers, James R. Grimm, Frank L. Nageotte, David A. Nielsen, and John W. Teets, the other appellees here, filed their motion to dismiss the action as to them. These defendants adopted the arguments previously made by Faber and Seith, and plaintiff stood on the arguments opposing dismissal previously advanced against Faber and Seith. This motion was granted on November 9, 1989, by an order which also provided that the court found no just reason to delay enforcement or appeal of the November 9, 1989, order or of the order it had entered on October 2, 1989, in regard to Faber and Seith. At no time did plaintiff seek leave to file an amended complaint in the trial court.

Plaintiff appeals the trial court's decision and asks this court to reverse and remand this case for further proceedings "with leave to amend if appropriate."

OPINION

There are two issues before this court on appeal. The first is whether plaintiff's complaint states a cause of action against these defendants. The second is whether plaintiff should be allowed to amend his complaint even though he failed to offer an amended complaint in the trial court.

Upon review of a ruling dismissing a complaint under section 2—615, we must determine whether the complaint has alleged facts sufficient to state a cause of action. (*Dilanjian Taxi Services, Inc. v. City of Chicago* (1990), 203 Ill. App. 3d 300, 560 N.E.2d 1195.) In examining plaintiff's complaint, we must accept as true all well-pleaded facts and reasonable inferences therefrom, but not conclusions or inferences of the pleader unless supported by specific facts. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426-27, 430 N.E.2d

976.) The complaint is deficient when it fails to allege the facts necessary for the plaintiff to recover. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005; *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 212, 230 N.E.2d 182.) Accordingly, we must determine what facts are necessary to state a cause of action against corporate directors for breach of fiduciary duty and negligent mismanagement.

■ Directors owe a fiduciary duty to their corporations and to their shareholders. (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 760-61, 444 N.E.2d 549.) " 'It is their duty to administer the corporate affairs for the common benefit of all the stockholders and exercise their best care, skill and judgment in the management of the corporate business *solely in the interest of the corporation.* \*\*\* It is a breach of duty for the directors to place themselves in a position where their personal interests would prevent them from acting for the best interests of those they represent.' " (Emphasis in original.) *Shlensky v. South Parkway Building Corp.* (1960), 19 Ill. 2d 268, 278, 166 N.E.2d 793, quoting *Dixmoor Golf Club, Inc. v. Evans* (1927), 325 Ill. 612, 616, 156 N.E. 785.

■ In addition to their fiduciary duty to the corporation, directors must exercise in the management of corporate affairs the degree of care which prudent men, prompted by self-interest, would exercise in the management of their own affairs. (*Fields v. Sax* (1984), 123 Ill. App. 3d 460, 463-64, 462 N.E.2d 983.) If they exercise such care, they will not be held liable for honest errors in judgment. (*Lower v. Lanark Mutual Fire Insurance Co.* (1983), 114 Ill. App. 3d 462, 467, 448 N.E.2d 940.) Under this standard of care, directors have a duty to attend and to participate in regular board meetings (*Fields v. Sax,* 123 Ill. App. 3d 460, 462 N.E.2d 983), and the duty to inform themselves of the material facts necessary to exercise their judgment. *Gaillard v. Natomas Co.* (1989), 208 Cal. App. 3d 1250, 256 Cal. Rptr. 702 (directors may not close their eyes to what is going on about them in corporate business and must, in appropriate circumstances, make such reasonable inquiry).

■ The business judgment rule acts to shield directors who have been diligent and careful in performing their duties from liability for honest errors or mistakes of judgment. (*Lower v. Lanark Mutual Fire Insurance,* 114 Ill. App. 3d 462, 448 N.E.2d 940; see generally 3A W. Fletcher, Private Corporations § 1039 (perm. ed. 1986).) Under this rule, the " 'judgment of the directors of corporations enjoys the benefit of a presumption that it was formed in good faith and was designed to promote the best interests of the corporation they serve.' " (*Shlensky v. Wrigley,* 95 Ill. App. 2d at 178, quoting *Davis v. Louisville Gas*

*& Electric Co.* (1928), 16 Del. Ch. 157, 169, 142 A. 654, 659.) Consequently, absent allegations of "bad faith, fraud, illegality or gross overreaching, courts are not at liberty to interfere with the exercise of business judgment by corporate directors." *Fields v. Sax*, 123 Ill. App. 3d at 467; see also *Shlensky v. Wrigley*, 95 Ill. App. 2d at 181 ("unless the conduct of the defendants at least borders on one of the elements [fraud, illegality or conflict of interest], the courts should not interfere").

■ The plaintiff correctly points out that the shield of the business judgment rule is unavailable to directors who fail to exercise due care in their management of the corporation. (*Lower v. Lanark Mutual Fire Insurance Co.* (1983), 114 Ill. App. 3d 462, 467, 448 N.E.2d 940 ("To come within the ambit of the [business judgment] rule, directors must be diligent and careful in performing the duties they have undertaken"); 3A W. Fletcher, Private Corporations § 1040, at 56 (perm. ed. 1986) (the business judgment rule "does not apply where the loss is the result of failure to exercise proper care, skill and diligence").) The exercise of due care is a prerequisite to the applicability of the business judgment rule and consequently directors may still be held liable for damages caused by their lack of due care in carrying out their duties. If due care is exercised, however, then the business judgment rule is applicable to preclude director liability for erroneous judgments absent conduct involving fraud, illegality or conflict of interest. *Fields v. Sax*, 123 Ill. App. 3d 460, 462 N.E.2d 983; *Shlensky v. Wrigley*, 95 Ill. App. 2d 173, 237 N.E.2d 776.

Plaintiff contends that the trial court's ruling that the business judgment rule required dismissal of the instant complaint stands for the proposition that directors can completely ignore their responsibilities to the corporation without incurring liability so long as they do not defraud the corporation, steal from it, or engage in criminal conduct. We disagree. Although the trial court did not specifically address the insufficiency of the pleadings in establishing a cause of action predicated upon negligence, lack of due care, inattentiveness, or the failure to make an informed decision, we agree with the contention of the defendants on appeal that the complaint is wholly insufficient in that regard.

The specific allegations of breach of fiduciary duty and of negligent mismanagement, as set out in detail above, pertain to actual decisions or determinations of judgment made by defendants. This is evident from the language of the complaint itself. For example, in subparagraph (a), defendants are charged with failure to develop "adequate" underwriting procedures and controls, from which it may be reasonably inferred that they did develop some

underwriting procedures and controls although, in plaintiff's opinion, they were inadequate. In subparagraph (b), defendants are charged with "underpricing" reinsurance and insurance business, again implying that they made some pricing decisions. Similarly, in subparagraph (c), defendants are charged with failure to develop "adequate" controls. The allegations of subparagraphs (d), (e), (f), (g), (h), (j), (k), (l), (m) and (n) are similar in nature.

The allegations which come the closest to establishing plaintiff's cause of action are those contained in subparagraphs (g), (i), (o), and (p). These allegations charge defendants with failing to oversee the performance of managing general agents, wrongful delegation of responsibility, and failure to properly manage and supervise. Contrary to plaintiff's contention, these allegations, as currently framed, attack no more than the defendants' actual exercise of their business judgment and are consequently within the protected parameters of the business judgment rule. Plaintiff has not alleged that any such failure was by reason of inexcusable unawareness or inattention or lack of good faith on the part of the directors.

Plaintiff contends that the complaint adequately pleads the absence of business judgment so as to make the business judgment rule inapplicable and that "the defendants' failure to make business judgments is the crux of his complaint." We disagree. Nowhere in the complaint does plaintiff allege that the defendants did not make informed judgments or use due care in arriving at those judgments, facts which are essential for the plaintiff to recover for negligence. Likewise, there are no allegations that the decisions made involved any fraud, illegality, conflict of interest or bad faith on the part of defendants. Nor does the complaint allege that defendants acted other than in the best interest of the corporation, a fact necessary to recover for breach of fiduciary duty. Instead, plaintiff's complaint questions those decisions which defendants made. This is exactly the type of second-guessing which the business judgment rule was designed to preclude.

Plaintiff relies on *Lower v. Lanark Mutual Fire Insurance Co.* (1983), 114 Ill. App. 3d 462, 448 N.E.2d 940, to argue that the applicability of the business judgment rule should not be decided on a motion to dismiss. In *Lower v. Lanark Mutual Fire Insurance*, the trial court granted summary judgment for the defendant directors because plaintiff had not alleged illegality, fraud or personal gain by defendants, and therefore the business judgment rule protected the directors from liability. The appellate court reversed, finding there to be a genuine issue of material fact as to whether the directors had acted in good faith, stating (114 Ill. App. 3d at 468):

"The record is replete with depositions of the various directors wherein they admit to varying degrees of knowledge or ignorance about the service fee/compensation matter. An inference could be drawn from these facts that they had acted in good faith and had not breached their fiduciary responsibility so that their actions in exercising their judgment on December 16, 1978, were within the business judgment rule, or the contrary inference could be drawn."

Unlike *Lower v. Lanark Mutual Fire Insurance*, however, this case is before us on review of a ruling dismissing the complaint under section 2—615 (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), and the question is not whether there is a genuine issue of material fact, but rather the sufficiency of the pleading. (*People ex rel. Fahner v. Carriage Way West*, 88 Ill. 2d 300, 430 N.E.2d 1005.) As discussed above, we conclude that the complaint is insufficient.

■ Although pleadings are to be liberally construed (Ill. Rev. Stat. 1987, ch. 110, par. 2—603(c)(2)), " 'a complaint which does not allege facts, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and *** such deficiency may not be cured by liberal construction or argument.' " (*In re Beatty* (1987), 118 Ill. 2d 489, 500, 517 N.E.2d 1065, quoting *People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 152, 251 N.E.2d 211.) In the absence of factual allegations to the contrary in the complaint, we must presume that defendants acted in good faith and with due care, and as a result the business judgment rule precludes their liability. In so holding, we nonetheless recognize that the complaint may have well been amendable to state a cause of action if repled to allege facts which establish that the alleged harmful decisions of the directors were not errors in judgment but were a result of a lack of due care, such as inattentiveness or the failure to make informed decisions.

As presently pleaded, however, the thrust of plaintiff's complaint attacks the actual decisions made by the defendants. It is not enough, however, to question the decisions. The trial court was correct in holding that the complaint was insufficient in that it lacked allegations of fraud, illegality or conflict of interest on the part of the directors. Absent such allegations, decisions made by corporate directors are protected by the business judgment rule and may only be attacked by alleging facts showing lack of due care in the making of those decisions. To charge these defendants with negligence, plaintiff would be required to plead facts relating to the manner in which the alleged erroneous decisions were reached.

■ In his reply brief, plaintiff asks that this court remand this matter to the trial court with directions to allow leave to amend even

though he failed to seek such leave before the trial court. The general rule is that where the trial court dismisses a complaint and plaintiff does not ask for leave to amend, the cause of action must stand or fall on the sufficiency of the stricken pleading. *Mlade v. Finley* (1983), 112 Ill. App. 3d 914, 445 N.E.2d 1240; see also *Teter v. Clemens* (1986), 112 Ill. 2d 252, 492 N.E.2d 1340 (where no indication in record that plaintiff sought leave to file amended complaint in circuit court and proposed amended pleadings do not appear in record on appeal, remand denied).

Plaintiff concedes that he did not offer a proposed amended pleading to the trial court for its consideration, but argues that he should be allowed to amend his complaint because of the unusual posture of this case. Specifically, plaintiff points to the fact that the trial court dismissed his complaint on the grounds that it was legally insufficient in that it failed to plead fraud, illegality or conflict of interest without addressing the complaint's factual sufficiency. Plaintiff argues that he had no reason to believe at that point that the trial court would sustain his action if negligence were pleaded without pleading fraud, illegality, or conflict of interest. Moreover, plaintiff contends that in the argument before the trial court, defendants virtually conceded that "inattentive[ness]" was pleaded, but urged that it was not actionable by itself unless the conduct of the directors was dishonest. Plaintiff therefore contends that it would have been futile for him to move for the right to amend his pleading to establish lack of due care because the trial court appeared satisfied with the factual sufficiency of his pleading, but predicated its ruling on the erroneous legal premise that only fraud, illegality, or conflict of interest was actionable.

■ We agree that a plaintiff cannot use an appellate forum to test the sufficiency of his pleading without sustaining the consequences of finality. A party should not ordinarily be permitted to stand on his pleadings before the trial court and then seek leave to amend in the appellate court after the dismissal of the trial court is affirmed. Clearly, if after plaintiff's pleadings were stricken, he asked for and was granted leave to amend, an appeal at that time would be premature. (*Kawa v. Harnischfeger Corp.* (1990), 204 Ill. App. 3d 206, 561 N.E.2d 1179 (if plaintiff is granted leave to amend, order which dismisses complaint is not a final and appealable order); *Branch v. European Autohaus, Ltd.* (1981), 97 Ill. App. 3d 949, 424 N.E.2d 6.) Therefore, a party should ordinarily not be permitted to circumvent the rule against interlocutory appeals by first seeking to amend his pleadings after the appeal is filed. See *Mlade*, 112 Ill. App. 3d at 917, quoting *Krachock v. Department of Revenue* (1949), 403 Ill. 148, 153

("when the trial court strikes a complaint and the plaintiff does not ask for leave to amend, this is considered an election 'to stand by his complaint' [citation], and if the lawsuit is dismissed the cause of action 'must stand or fall upon [the] contents' of the stricken pleading"); see generally *Voss v. Lincoln Mall Management Co.* (1988), 166 Ill. App. 3d 442, 519 N.E.2d 1056.

However, careful analysis of the facts of this case once again confirms the adage that the exception often proves the rule. Where, as here, the climate in the trial court was inhospitable to plaintiff's theory of action and where, as here, the opposing party virtually conceded, at least for purposes of argument, the factual sufficiency of the pleading with respect to that theory, but urged that plaintiff's theory was legally insufficient, it would be manifestly unfair to prevent plaintiff from having an opportunity under those circumstances to amend his complaint once the legal sufficiency of his theory is affirmed.

Here, plaintiff purported to premise his actions upon negligent mismanagement. Defendants urged that mere negligence was a legally insufficient basis. Instead defendants argued that fraud, illegality, or conflict of interest must be shown to recover. The trial court in its ruling apparently adopted defendants' position. On appeal, we reasserted that the business judgment rule "does not apply where the loss is the result of failure to exercise proper care, skill and diligence." (3A W. Fletcher, Private Corporations § 1040, at 56 (perm. ed. 1986).) Nevertheless, it was our obligation to determine whether the ruling of the trial court was sustainable upon the record before us, even if on grounds other than those articulated. (*White Fence Farm, Inc. v. Land & Lakes Co.* (1981), 99 Ill. App. 3d 234, 424 N.E.2d 1370; *In re Application of County Treasurer* (1976), 35 Ill. App. 3d 449, 342 N.E.2d 249.) Accordingly, we upheld the determination of the trial court on the grounds of the factual insufficiency of the complaint. Under these exceptional circumstances, it would be unduly harsh and manifestly unfair to deny plaintiff an opportunity to amend his pleadings on remand simply because of factual insufficiencies in the pleadings which were not addressed by the trial court.

The court's decision in *Johnson v. Lincoln Christian College* (1986), 150 Ill. App. 3d 733, 501 N.E.2d 1380, is particularly persuasive. In *Johnson,* the plaintiff's seven-count complaint was challenged by seven separate motions to dismiss filed by the codefendants each of which alleged one nonamendable defect for each count. After hearing arguments, the trial court dismissed the plaintiff's complaint in a one-sentence order which simply stated that all the motions by the defendant were allowed.

The appellate court allowed plaintiff to amend his complaint even though he did not seek leave to amend from the trial court. The *Johnson* court rejected defendants' contention that the plaintiff waived his right to present an amended complaint to the trial court, stating that "[r]epleading under these circumstances would indeed have been futile, leading to a needless delay in the administration of justice." (*Johnson*, 150 Ill. App. 3d at 749.) The court then invoked its powers of amendment under Illinois Supreme Court Rule 366 (134 Ill. 2d R. 366) and allowed plaintiff to amend his complaint stating, "We hereby exercise our power [under Supreme Court Rule 366] to make an order that should have been made by the circuit court and allow Johnson to amend his complaint \*\*\*." (*Johnson*, 150 Ill. App. 3d at 749. *Cf. In re Estate of Pirie* (1986), 141 Ill. App. 3d 750, 492 N.E.2d 884.) There, plaintiff's legal theory survived challenge at the trial level, but was held invalid for the first time on appeal. Thereafter, the appellate court determined that there were sufficient facts of record to have upheld a cause of action under the correct legal theory and invoked its powers under Rule 366. The court stated, "We do not think plaintiffs should be denied the opportunity to amend their complaint merely because the invalidity of their legal theory was determined first in the reviewing court rather than at the trial level." *Pirie*, 141 Ill. App. 3d at 771.

■ Like the plaintiff in *Johnson*, plaintiff's complaint was dismissed on a nonamendable ground. It would have been futile for the plaintiff to seek leave to amend in the trial court to factually support his legal theory of negligence which the trial court appeared to reject as nonactionable. Moreover, the factual sufficiency of plaintiff's complaint in support of the legal theory urged by plaintiff was never really challenged or explored. Consequently, we determine that plaintiff should have the opportunity to amend his complaint on remand in spite of his failure to seek leave to amend in the first instance in the trial court. *Cf. Fleener v. Fleener* (1970), 133 Ill. App. 2d 118, 122, 263 N.E.2d 879 ("[p]laintiff's contention that the complaint fails to state a cause of action was not made in the trial court and although courts of review have considered such assignments of error when made for the first time in a court of review, if the error may be obviated without prejudice the ends of justice are better served by permitting the amendment"); see also *O.K. Electric Co. v. Fernandes* (1982), 111 Ill. App. 3d 466, 444 N.E.2d 264 (raising new grounds on appeal in support of its motion to dismiss would deny plaintiff the opportunity to cure a defect by amendment in the trial court).

Accordingly, we remand this case to the circuit court of Cook

County for further proceedings consistent with the views expressed in this opinion.

Affirmed and remanded.

McNULTY and MURRAY, JJ., concur.