People of the State of Illinois, Plaintiff-Appellee, v. James Brownlow and Larry Brownlow, Defendants-Appellants.

Gen. No. 53,417.

First District, Fourth Division.

September 17, 1969.

David B. Kahn, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James J. Meehan, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

## OFFENSES CHARGED

Aggravated battery. Ill Rev Stats (1967), c 38, §§ 12–4(a) and 12–4(b) (6).

## JUDGMENTS

After a bench trial, both defendants were found guilty of aggravated battery in causing great bodily harm to Edwin Cardish (§ 12–4(a)) and defendant James Brownlow was found guilty of aggravated battery in committing a battery upon Leo Marks, knowing him to be a peace officer (§ 12–4(b) (6)). James Brownlow was given concurrent sentences of one year in the House of Correction. Larry Brownlow was sentenced to one year at the Illinois State Farm.

## ISSUES RAISED ON APPEAL

1. Defendants were not proven guilty of the battery of Edwin Cardish.

2. Defendants did not knowingly waive their right to a jury trial.

## EVIDENCE

When the case was called for trial, with both defendants and their attorney (Asst. Public Defender Scheffler) present in open court, the following took place:

THE COURT: "State ready?"

MR. LANE: "State is ready."

(Discussion off the record between Mr. Scheffler and the defendants.)

• • • • • •

THE COURT: "Mr. Public Defender, are you ready?"

MR. SCHEFFLER: "Ready."

THE CLERK: "They are all charged with aggravated battery.

"James Brownlow has two counts of aggravated battery, all on felonies. Ready for a hearing?"

MR. SCHEFFLER: "Ready."

MR. LANE: "The State will ask leave to file an additional charge of aggravated battery as a misdemeanor."

THE COURT: "You are asking to amend?"

(Discussion off the record between the Court and Mr. Lane.)

THE CLERK: "Ready for trial?"

MR. SCHEFFLER: "Yes."

THE CLERK: "What is the plea?"

MR. SCHEFFLER: "Not guilty, jury waived."

MR. LANE: "Motion to amend on its face, Your Honor."

THE COURT: "Leave granted. Swear the witnesses."

Whereupon, the case proceeded to trial.

Edwin Cardish, for the State:

On March 13, 1968, at approximately 9:45 p. m., he was in the vicinity of 3153 North Broadway when the two defendants (identifying them) came after him, swung at him, and called him names. They knocked him down and pushed him into a window. He ran into a garage and then realized, from the blood coming down his side, that his back had been cut. He went to the hospital where the wound required a tube to be inserted to drain off the blood and twelve stitches to close it. He also suffered a laceration in the head, requiring one stitch.

On cross-examination, the witness denied confronting or starting any fight with James Brownlow. He identified Larry Brownlow as the one who had pushed him through the window, and claimed that he did not know the Brownlows personally nor had he ever seen them before March 13, 1968.

Police Officer David Paul, for the State:

Responding to a call about a stabbing, he was advised by a man at the scene that, after hearing breaking

glass, he had seen two boys run into a nearby building. The man lived in that building and opened the outer door for the investigators (witness and Officer Royce) to enter the building. When they knocked on a door, it was opened by Larry Brownlow, who told them, "you have no right to be here. You don't have a warrant." After a little verbal abuse, Larry said he would cooperate, as they had nothing to hide, and the officers were admitted into the apartment. The Brownlow brothers and a Mr. Erb were in the apartment, and the officers questioned them as to their whereabouts at the time of the incident. They stated they had been in the apartment all evening, and denied the commission of any offense. The witness then left, but, after getting a further description of the clothing worn by the assailants, he returned to the apartment and arrested the three occupants. (The charge was later dropped as to Erb.)

Police Officer Leo Marks, for the State:

Four uniformed police officers, including Officers Royce and Paul and Sergeant Corcoran, returned to the apartment. While the witness was searching Larry Brownlow, James Brownlow broke loose from the Sergeant and kicked the witness in the groin, saying that he would kill him.

James Brownlow, for the defense:

He had never seen Edwin Cardish until the evening of March 13, 1968, in the vicinity of 3153 North Broadway. He and his brother, Larry, and Mr. Erb were walking along the street when Erb accidentally bumped into Cardish. Cardish then came up behind the witness and started laughing. The witness turned around and Cardish swung at him, whereupon Larry shoved him and he went through the glass.

Cardish didn't make contact with the swing, but it was the first blow. After the incident, the Brownlows and Erb ran home not knowing that Cardish was injured.

The second time the police officers came to the apartment he was involved in a scuffle with Officer Marks, but he did not kick him.

Larry Brownlow, for the defense:

Erb had bumped into Cardish and then apologized. Cardish laughed at him. Cardish then swung at James and when he grabbed the witness' lapels, the witness "just shoved him through the window." He didn't mean to shove him through the window. Cardish took the first swing, but he wasn't certain if it made contact with his brother.

He didn't see Officer Marks in pain or on the floor of the apartment at any time. He told the officers, on the evening of the incident, that he never left the house because he was afraid of the police.

OPINION

 Defendant James Brownlow does not contend that the evidence was insufficient to establish his guilt in the battery of Officer Marks. Both defendants do argue that the proof failed to establish beyond a reasonable doubt that they were guilty of the charge relating to Edwin Cardish. We conclude, however, that the testimony of the State's witnesses was adequate, if believed, to justify the trial court's finding, and the credibility of the witnesses is, of course, a matter for the trier of fact.

Defendants' principal point is that they did not knowingly waive their right to a jury trial. This right, which is of constitutional origin, has been given statutory implementation as follows:

> Every person accused of an offense shall have the right to a trial by jury unless *understandingly* waived by defendant in open court. (Emphasis supplied.) Ill Rev Stats (1967), c 38, § 103–6.

 The record in this case discloses . that defense counsel advised the court that a jury trial was waived,

and that the trial court directed no question regarding the waiver to either of the defendants nor to their attorney. When the latter said, "jury waived," the court immediately proceeded with the trial. It has been held repeatedly that it is the responsibility of the trial judge to insure that the waiver of a jury trial is knowingly and understandingly made. E. g., People v. Wesley, 30 Ill2d 131, 195 NE2d 708. The satisfaction of this requirement was discussed in People v. Richardson, 32 Ill2d 497, 207 NE2d 453 which upheld the jury waiver on the facts of the case. In Richardson, counsel indicated that there was a jury waiver, and the defendant remained silent. It was twice stated in court in the presence of defendant that there was a jury waiver, and during a recess that occurred after these announcements, there was an "opportunity [for defendant and his counsel] to discuss the merits of this decision." There was also a written waiver submitted, evidence of further deliberation on this point. Richardson added a note of caution, nonetheless, by stating that "the trial court might well have dwelt at more length on this matter" to insure that waiver was knowingly and understandingly made.

The requirement that a jury waiver by defendant must be knowingly made, has been held to impose a duty on the trial judge to ascertain to his satisfaction that the waiver was understandingly made. People v. Turner, 80 Ill App2d 146, 225 NE2d 65. That requirement was strictly applied in Turner, supra, since the waiver was held not to have been understandingly made in spite of the fact that the judge had requested counsel to advise defendant of his right to jury trial and had also inquired of defendant whether he understood what a jury trial was. By analogy to the acceptance of a plea of guilty, see People v. Mims, 42 Ill2d 441, 248 NE2d 92, in which the court cited McCarthy v. United States, 89 S Ct 1166, to emphasize "the importance of personal inquiries addressed to the defendant to ascertain directly his under-

standing of the nature of the charge against him." See also Boykin v. Alabama, 395 US 238.

The State has attempted to interpret differently the cases cited by defendant, but in our opinion it has not impaired the validity of his position. Richardson, supra, which upheld a waiver, did involve a recess, but, unlike that in the instant case, it took place while the jury waiver was under discussion. The present facts show that the recess occurred before any mention was made of jury waiver. It would be presumptuous to attach to this recess any significance that would link it with the jury waiver.

In Turner, supra, the defendant was an illiterate who specifically stated that he did not know what a jury trial was. However, this was not the ground for the reversal; rather, it was because the trial court had not adequately informed the defendant of the nature of a jury trial so as to enable him to waive it understandingly, if he so desired. There was an initial attempt, considered inadequate, in that case, to inform the defendant, whereas, in the case at bar, no such effort was made.

The State urges that defendants' silence before the court should be construed as an acquiescence to their counsel's statement that a jury was waived, citing People v. Melero, 99 Ill App2d 208, 240 NE2d 756. We recognize that whether a jury waiver has been knowingly and understandingly made, depends upon the facts and circumstances of each case, and there can be no precise formula for determining the issue. People v. Palmer, 27 Ill2d 311, 189 NE2d 265; Richardson, supra. We must, however, disagree with the Melero opinion to the extent that it stands for the proposition there stated (pages 211–212) that "the trial court was entitled to rely on the professional responsibility of defendant's attorney that when he informed the court that his client waived a jury, it was knowingly and understandingly consented to by his client." We believe that the court cannot, in that way, delegate its responsibility to assure to a defendant his

understanding of so basic a right as that of trial by jury.

We conclude that the trial court in the instant case did not fulfill its obligation in this regard, so the judgments of the Circuit Court are reversed and the cause remanded for a new trial.

Reversed and remanded.

DRUCKER, P. J. and McNAMARA, J., concur.