2 Ill. App.3d 384 (1971)
276 N.E.2d 490
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
LUBOMYR SURIWKA, et al., Defendants-Appellants.
No. 53339.
Illinois Appellate Court  First District.
November 4, 1971.
*385 Ralph E. Brown, Joseph Minsky, and William J. Essig, of Chicago, for appellants.
Edward V. Hanrahan, State's Attorney, of Chicago, (Paul P. Biebel, Jr., Assistant State's Attorney, of counsel,) for the People.
Affirmed in part and reversed in part.
Mr. JUSTICE DEMPSEY delivered the opinion of the court:
This appeal involves the conviction of four men, Lubomyr Suriwka, P.T. Demus, Roman Dziubynskyj and Teofil Kawka, for various offenses arising out of a melee in and around the rectory of St. Nicholas Ukranian Catholic Church in the City of Chicago.
*386 The defendants contend that they did not understandingly waive a jury trial; that the trial court erred in giving greater credibility to testimony by clergymen than to laymen; that the conviction of one of the defendants for resisting arrest was not supported by the evidence, and that the conviction of another for disorderly conduct was based on an unconstitutional ordinance.
A large number of parishioners gathered outside the church and around the rectory at the conclusion of the eight o'clock mass on the morning of January 19, 1968. The defendants' brief gives the following explanation for the gathering:
"The crowd, which had assembled spontaneously, was a demonstration against the priests of the parish who had * * * changed some religious rite or ritual which would have otherwise taken place on this day. Water was to be blessed."
Although the demonstration may have been spontaneous, it appears that the priests of the parish anticipated trouble. They had notified the police department and several uniformed policemen were in the vicinity of the church.
Some of the demonstrators entered the rectory; some remained outside. The defendants, Dziubynskyj and Kawka were among those who entered and we will discuss their cases first.
A witness for the prosecution testified that these defendants led a crowd of women up the steps and into the rectory. Monsignor Peter Leskiw and Fathers Thomas Glynn and William Bilinsky were in the living quarters on the second floor. The apartment door was locked and bolted. The door began to splinter, the locks gave way and the door was smashed against the wall. The crowd, headed by Dziubynskyj and Kawka, burst into the room. The priests told the people that they had no right to break into a private home and asked them to leave, Glynn speaking to them in English and Leskiw in Ukranian. Instead, they advanced further into the apartment and into Leskiw's study.
The women carried bottles of water; they pushed at the priests and demanded that the water be blessed. Everyone was talking at the same time; Leskiw tried to calm them but could not. Glynn was not dressed in clerical attire and Dziubynskyj, who had a camera around his neck, raised it to take his picture. Glynn objected, put his hand toward the camera and, as he did so, Kawka struck him in the face with his fist. Leskiw stepped between the two men and held Kawka back. Glynn was stunned, blood spurted from his nose, his eye became black and he was later treated for damaged cartilage. Bilinsky attempted to telephone the police but he was pulled from the telephone, struck with a metal pitcher and doused with water. He knelt on the floor and prayed.
*387 Policemen, who had to fight their way through the crowds on the rectory steps and upon the stairway leading to the second floor, came through the broken door and Dziubynskyj and Kawka started to leave the apartment. Leskiw shouted to the police to hold them and the two men were arrested.
Dziubynskyj testified that after attending the eight o'clock mass he followed fifteen to twenty-five people into the rectory. When he got to the second floor the door to the living quarters was open and people were in all the rooms. About fifteen were in the study with the three priests. He was in the rear of the crowd and asked a woman to stand aside so that he could take a picture. Glynn, who was about seven feet away, saw the camera, jumped at him, hit his camera, struck him between the nose and eye and knocked his glasses to the floor. He denied breaking through the door and said he did not see Kawka hit any priest.
Glynn testified that he did not strike anyone, Leskiw and Bilinsky corroborated him. Leskiw said he saw Glynn reach for Dziubynskyj's camera but did not know if he touched it. He also said he saw Dziubynskyj holding his glasses and heard him say they were broken but he did not know how they were broken.
Kawka admitted entering the apartment but he said the door was open and many women were already inside. He saw Glynn hit Dziubynskyj as the latter was trying to take a picture. He denied striking Glynn but admitted that he pushed him hard and forced him to the wall, and that Glynn's nose was bleeding right afterwards.
Two women who had been in the apartment testified for the defendants. One said that she accompanied Dziubynskyj into the building and that the second floor door was open when they arrived. She saw Glynn hit Dziubynskyj, whose glasses fell to the floor. The second woman, who said she preceded Dziubynskyj into the apartment, also said the door was open. This woman said that she saw Glynn strike the woman who had previously testified.
The court found Dziubynskyj guilty of criminal damage to property but not guilty of disorderly conduct. He was fined $200.00, placed on probation for one year and ordered to pay for the damage to the rectory door. Kawka was found guilty of battery and criminal damage to property. He was fined $100.00 for the battery, given one year's probation on each charge and ordered to make restitution for the broken door.
Outside the rectory some two hundred people milled about. A few policemen tried to hold back nearly one hundred men and women who were trying to enter the building. Additional police were rushed to the scene and more were deployed in protecting the entrance. After the disturbance on the second floor had been quelled, the police cleared *388 the rectory and attempted to disperse the people gathered on and around the front steps. They informed the crowd that the parishoners and police were out of the building and no one would be allowed to go in. A loudspeaker had been set up and the people were told many times that they had become a disorderly mob, were blocking the sidewalk and street, were trying to force their way into private property and would be arrested if they did not stop.
One of those warned was the defendant, Demus. Officer Kenneth Cullen testified that he placed him under arrest for disorderly conduct after Demus refused for the second time to comply with his order to move on. When he attempted to take him to the patrol wagon, Demus pulled the officer's arm away, tore his watch off and started to struggle. The crowd moved in and tried to take the prisoner away. Other policemen came to Cullen's aid. Demus fell to the ground, locked his arm around a fence and, with the crowd surging around, the police could not move him. Eventually, the crowd was held back and several officers extricated Demus and fought their way through the crowd to the patrol wagon.
Officer Patrick Boyle was one of the officers who went to Cullen's assistance. He testified that on his way to the wagon the crowd closed in and he grabbed Demus by the neck and pushed him the last 50 feet. The defendant, Suriwka, was one of those between the wagon and the officer. Suriwka seemed to be protesting and was shouting in a language Boyle did not understand. When Boyle pushed Demus into the wagon, Suriwka asked to go along. Boyle accommodated him. He arrested Suriwka for disorderly conduct and obstructing an arrest.
Demus testified that he was a practicing physician. He saw the people outside the rectory and examined one woman who had been hit in the face. He said he told this to Cullen when he was ordered to move on and also told Cullen he wanted to relate it to the newsmen who were present. He explained his being on the ground by saying an officer grabbed him around the neck; he felt a pressure and fell, and was probably unconscious temporarily. Cullen denied forcing Demus to the ground or hearing him say he was a doctor and treating a woman who had been hurt. He acknowledged that Demus may have said he was upset because a woman had been struck by a policeman.
Suriwka, a civil engineer, testified that he went to the rectory stairs to observe the crowd. He admitted that a police lieutenant, speaking by means of a voice amplifier, asked the crowd to leave. He saw an officer strike a woman over the head. She cried and two doctors examined her. He heard Demus explain to a newsman that the woman needed treatment and next saw Demus lying on the sidewalk. He stood between the police and the wagon when Demus was being carried there and said, "You take *389 me too." He testified that he did not refuse to enter the wagon because "I asked for it."
The court found Demus guilty of resisting his arrest by Officer Cullen, but not guilty of resisting Officer Boyle. He was fined $200.00, placed on probation for one year and ordered to compensate Cullen for his broken wristwatch. Suriwka was found not guilty of resisting arrest but guilty of disorderly conduct. He was fined $100.00.
The first contention  common to all the defendants  is that they did not understandingly waive a jury trial. Prior to the commencement of the trial the defendants' attorney informed the court that the jury would be waived "on all four defendants, on all charges." In People v. Sailor (1969), 43 Ill.2d 256, 253 N.E.2d 397, the court said that an accused ordinarily speaks through his attorney and by permitting him  in his presence and without objection  to waive his right to a jury trial is deemed to have acquiesed in and to be bound by the attorney's action. There was but one defendant in Sailor and there are four here; because of this, the defendants argue that Sailor has no application and they should have been individually admonished of their right to a jury trial.
 1-4 The fact that a single attorney represents multiple defendants charged with multiple offenses does not change the Sailor rule. An attorney may represent half a dozen clients in the same trial as long as their interests do not conflict. He owes to each the same duty and loyalty and there is no basis for presuming that he has not explained their rights to them as fully as the lawyer who represents but one defendant. The defendants were present and made no objection when their attorney waived a jury trial. No claim is made that he did not explain to them the meaning of the waiver or that he acted in violation of their wishes. The trial court was entitled to rely upon the professional responsibility of the attorney and to presume from his waiving a jury trial that his clients knowingly and understandingly consented to the procedure.
It is also urged that the defendants are of Ukranian descent and did not have a good comprehension of the English language. Although interpreters were necessary for some of the witnesses, the defendants themselves testified without difficulty in English. There is no reason to believe that they were unable to understand either the words or the import of their attorney's declaration that a jury would be waived.
 5 A further argument in regard to the jury waiver raises the constitutional issue of due process. It is contended that in Illinois jury waivers by defendants who are represented by court-appointed counsel are scrutinized more closely and treated more indulgently on appeal than waivers made by defendants represented by retained counsel, and that it is a denial of due process not to apply the same standard to all defendants. *390 This argument is predicated upon cases which were reversed because the defendants did not personally waive a jury, e.g., People v. Brownlow (1969), 114 Ill. App.2d 458, 252 N.E.2d 685 and People v. McGraw (1969), 115 Ill. App.2d 444, 253 N.E.2d 518. These cases were decided before the decision in People v. Sailor, supra. The fact that the defendants in these cases may have been represented by appointed counsel was merely coincidental. There is no distinction made by the reviewing courts of this state between jury waivers by retained counsel and by court-appointed counsel insofar as they pertain to the responsibility of counsel or the effectiveness of the waiver. The Sailor rule is applicable to both.
The defendant Dziubynskyj and Kawka join in the next contention. Their convictions for criminal damage to property and Kawka's for battery, rested principally upon the testimony of Monsignor Leskiw and Fathers Glynn and Bilinsky. In finding the defendants guilty, the court necessarily rejected their testimony and that of their witnesses and accepted that of the priests. It is asserted that the convictions should be reversed because the court inherently viewed the testimony of the clergymen differently than that of the lay witnesses. The assertion is predicated upon a remark made by the trial judge six weeks after the defendants had been found guilty.
The trial ended April 3, 1968, and the hearing in mitigation and aggravation was postponed until May 15th. Prior to sentencing, the judge reviewed the evidence and observed that the people's right to dissent is inherent in the American form of government. He then said:
"But over and above that what right does a person have to inflict a battery on soneone, be he a cleric or laymen? I don't think that this is material, because when the gentlemen of the clergy testified, they weren't testifying as priests; they were testifying as individuals. The accident of their persuasion  it is not a question of substance  the Court does not view a priest, rabbi or minister any differently than he does another citizen; and the law tells me I must not. On the question of credibility, that may be something else. But how can you justify this conduct. * * *"
Dziubynskyj and Kawka seize upon the words, "On the question of credibility, that may be something else" and assert they indicate that the judge followed an unconstitutional standard of credibility by giving greater credence to clergymen than to laymen.
 6, 7 We do not know what the judge meant by these words, but in consideration of the balance of his statement: "when the gentlemen of the clergy testified they * * * were testifying as individuals * * * *391 the court does not view a priest, rabbi or minister any differently than he does another citizen * * *," we cannot impute to them the meaning suspected by the defendants. It is proper to show a witness' occupation as reflecting on his credibility. (People v. Winchester (1933), 352 Ill. 237, 185 N.E. 580; People v. Bond (1917), 281 Ill. 490, 118 N.E. 14; Cicero & Proviso St. Ry. Co. v. Priest (1899), 89 Ill. App. 304; Aff'd 190 Ill. 592, 60 N.E. 814 (1901).) The judge may have meant nothing more than this, or he may have meant that after listening to all the witnesses he had found the clergymen's testimony more credible than that of the defendants. Since the ambiguous remark is susceptible of more than one interpretation it will be accorded an innocent rather than peccant construction. The convictions of Dziubynskyj and Kawka are affirmed.
 8-10 Demus contends that his conviction for resisting arrest must be reversed because there was neither a lawful arrest nor a knowing resistance. It is a criminal offense for a person to resist or obstruct "the performance by one known to the person to be a police officer of any authorized act within his official capacity. * * *" (Ill. Rev. Stat. 1967, ch. 38, par. 31-1.) Demus denied being told he was under arrest and claims, therefore, that the arrest was invalid. He also claims that his acts of resistance  breaking Officer Cullen's hold on him, struggling with the officer, falling to the sidewalk, clutching a fence and refusing to be taken to a patrol wagon  occurred while he was semi-conscious. Demus, admittedly, did not follow the order given to all the demonstrators to disperse and disobeyed Cullen's individual orders to move on. These were lawful orders, issued by those whom Demus knew were police officers; when he failed to comply, reasonable ground existed for arresting him. Cullen testified that when Demus refused to follow his instructions he placed him under arrest. The trial court found that an arrest was made and that Demus resisted the arrest. An appellate court will not interfere with findings based on the credibility of witnesses except where the evidence raises a reasonable doubt of the defendant's guilt. There was substantial evidence to support the conclusions of the court and they will not be disturbed.
 11 A further contention is that the arrest was invalid because Demus was engaged in no unlawful activity at the time of the arrest. Even if probable cause for the arrest were lacking, Demus had no right to use physical force to impede it. People v. Carroll (1971), (Ill. App.2d), 272 N.E.2d 822. His conviction is affirmed.
Demus was also found guilty of disorderly conduct. The record, however, does not show that any punishment was imposed for this offense and the appeal is only from the judgment finding him guilty of resisting *392 arrest. Whether he was or was not guilty of disorderly conduct need not be discussed since the non-imposition of sentence would not sustain an affirmance of his conviction.
 12, 13 The defendant Suriwka, on the other hand, was fined for disorderly conduct. His contention is that his conviction was based on an unconstitutionally vague ordinance. It is, unnecessary to consider this contention because we find that the prosecution did not meet its burden of proving him guilty beyond a reasonable doubt. The evidence concerning Suriwka was that he shouted in a foreign language, protested Demus' arrest and asked to be taken into custody. The prosecution suggests that his language incited the crowd and caused it to close in on the police when they were escorting Demus to the patrol wagon. This is pure conjecture. In the absence of proof of what he said we cannot accept the State's argument. Neither vocally protesting an arrest nor saying to the police, "You can arrest me if you please," necessarily constitutes disorderly conduct. See: City of Chicago v. Meyer (1969), 44 Ill.2d 1, 253 N.E.2d 400.
The judgments are affirmed as to the defendants Dziubynskyj, Kawka and Demus. The judgment is reversed as to the defendant Suriwka.
Affirmed in part and reversed in part.
McNAMARA, P.J., and McGLOON, J., concur.