TRECO, INC. and Wisconsin Real Estate Investment Trust, Plainitffs,

v.

LAND OF LINCOLN SAVINGS AND LOAN, Frank J. Kinst, Thomas A. Kinst, Ronald R. Drajka, Robert J. Hajek, Phillip R. Kasik, William Kinst, Warren H. Muchow, John A. Storcel, John J. Lachajewski, and Paul A. Downing, Illinois Commissioner of Savings and Loan Associations, Defendants.

No. 83 C 5941.

United States District Court,
N.D. Illinois, E.D.

Oct. 31, 1983.

---

See also, 572 F.Supp. 1447; 572 F.Supp. 1451.

Donald R. Harris, Jenner & Block, Nathan H. Dardick, Dardick & Jadwin, Chicago, Ill., for plaintiffs.

Neil F. Hartigan, Atty. Gen. of Ill. by Roger P. Flahaven, Asst. Atty. Gen., Chicago, Ill., for defendant Paul Downing.

Sherwin J. Markman, Hogan & Hartson, Washington, D.C., Joseph E. Coughlin, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

The above-captioned matter came before the Court for trial on the merits of Counts IV and VII of plaintiffs' Second Amended Complaint.[1] Also pending before the Court is a motion to dismiss by defendant Paul A. Downing, Illinois Commissioner of Savings and Loan Associations. The Court, having heard testimony on October 24 and 25, 1983, and having reviewed deposition designations, exhibits and memoranda submitted by the parties, does hereby enter the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1. Plaintiff Treco, Inc. ("Treco") is a Florida corporation with its principal office in Jacksonville, Florida.

2. Plaintiff Wisconsin Real Estate Investment Trust ("WREIT") is a common law business trust formed under the laws of the State of Wisconsin with its principal executive office in Chicago, Illinois.

3. Defendant Land of Lincoln Savings and Loan ("Lincoln") is a savings and loan association chartered under the laws of Illinois. Deposits at Lincoln are insured by the Federal Savings and Loan Insurance Corporation. Lincoln is regulated by the Federal Home Loan Bank Board and the Illinois Commissioner of Savings and Loan Associations.

4. Nine individual defendants are members of Lincoln's Board of Directors. The remaining defendant, Paul A. Downing, Illinois Commissioner of Savings and Loan Associations, was added as a party-defendant by the Second Amended Complaint filed October 18, 1983.

5. Between June 7 and June 23, 1983, plaintiffs' affiliate, Technical Equipment Leasing Corporation, acquired shares of Lincoln's stock. On June 24, 1983, WREIT and Treco each purchased shares of Lincoln's stock from Technical. On September 21, 1983, Lincoln had 2,496,956 shares of stock outstanding. Together, Treco and WREIT own approximately 9.956 percent of the outstanding common shares of Lincoln.

6. In June, 1983, Lincoln directors planned a public offering of Lincoln stock to be effective June 9, 1983.

7. On June 8, 1983, Randy E. Nonberg, legal counsel for Dean Witter Reynolds, Inc., underwriter of Lincoln's proposed public stock offering, received a telephone call from an attorney representing a California group of Lincoln's shareholders. The California attorney told Nonberg that his clients owned 41 percent of Lincoln shares and wanted Lincoln to delay or stop its public offering of stock, and if Lincoln refused, these shareholders would seek a special meeting of Lincoln stockholders in order to remove all the directors, elect new directors and liquidate the association.

8. Dean Witter and Lincoln determined to proceed with the offering. The California attorney then told Nonberg that his clients were attempting to stay Lincoln's permit to offer and sell securities in the State of California. Attorneys with Nonberg's office later verified that such an attempt had been made but was unsuccessful.

9. The threat was subsequently disclosed by Lincoln in the offering circular issued on June 9, 1983:

---

1. Counts IV and VII seek declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure. The trial of Counts IV and VII was advanced on the Court's calendar due to the need for a decision before Land of Lincoln's October 26, 1983 annual meeting.

Counsel for the Underwriters has been advised by telephone that certain stockholders, whose percentage ownership of the currently outstanding shares was reported to exceed the minimum number necessary to call a special stockholders' meeting, intend to call such a meeting for the purpose of removing incumbent directors, electing new directors and liquidating the Association. (Plaintiffs' Exhibit 4, p. 41.)

10. Based upon the testimony of Thomas Kinst, President, Chief Executive Officer and a member of the board of directors of Lincoln, Lincoln's directors reasonably believed that liquidation of Lincoln would substantially decrease the value of stock owned by Lincoln's shareholders. Lincoln's directors also reasonably believed that sudden removal of all of Lincoln's directors would cause many depositors to withdraw their savings. Such action would have not been in the best interest of Lincoln and its shareholders. Kinst and Dean Witter reasonably believed the threats of the California shareholders to be serious.

11. On June 15, 1983, a meeting was held at the offices of Dean Witter in Chicago to discuss how Lincoln should respond to the threats of the California group. At that meeting, potential bylaw amendments were discussed and Lincoln's attorneys were requested to draft bylaw amendments in response to the threats received from the California shareholders. Other anti-takeover and anti-liquidation measures were discussed.

12. On June 22, 1983, at a meeting of the board of directors, the directors, pursuant to recommendation of counsel, voted to amend Article XI of Lincoln's bylaws. Prior to June 22, 1983, Article XI provided:

These bylaws may be amended at any time by a two-thirds vote of the full board of directors or by a majority vote of the votes cast by the stockholders of the association at any legal meeting.

At the June 22 meeting, the directors amended Article XI to read as follows:

These bylaws may be amended at any time by a two-thirds vote of the full

board of directors, or by a two-thirds vote of the total votes eligible to be cast by the stockholders at a legal meeting called expressly for such purpose.

13. The June 22, 1983 amendment to Article XI was adopted by the directors pursuant to advice of counsel in order to defend Lincoln against the threat of hostile takeover and liquidation by the group of California shareholders.

14. Also on June 22, 1983, Lincoln's directors, pursuant to recommendation of counsel, voted to amend Lincoln's bylaws by adding a new Section 14 to Article III of the bylaws. That amendment provided that a director could be removed from office, during his one-year term, for cause and by an affirmative vote of 75 percent of votes eligible to be cast by shareholders. Prior to this amendment, Lincoln's bylaws did not provide for shareholder removal of directors.

15. Both bylaws amendments were approved by the Illinois Commissioner of Savings and Loan Associations on June 30, 1983.

16. Based upon the testimony of defendant directors, Thomas A. Kinst and Robert J. Hajek, who personally appeared before the Court and whose testimony is highly credible, as well as the deposition testimony of other directors, particularly Ronald R. Drajka, John J. Lachajewski and Phillip R. Kasik, portions of which have been read into the record, the Court finds that the primary purpose of the June 22, 1983 bylaw amendments to Article XI and Article III was to protect the interests of all shareholders and depositors by taking defensive action in response to a threat to remove all directors and liquidate Lincoln. At the June 22, 1983 meeting, the directors reasonably believed that the threats of the California shareholders received on June 8, 1983, continued to be serious and potentially detrimental to the best interests of Lincoln and its shareholders.

17. Lincoln's bylaws neither require nor provide any means for shareholder approval of a bylaw amendment adopted by the

board of directors and the defendant directors did not seek nor receive shareholder approval for these amendments to Article XI and Article III of Lincoln's bylaws.

18. Lincoln's bylaws contain no provision providing for cumulative voting.

19. A special meeting of the shareholders was called by defendants, pursuant to order of this Court, for October 12 and 13, 1983, for the purpose of voting on plaintiffs' proposal to amend the bylaws to permit cumulative voting at the October 26, 1983 annual meeting.

20. At that special shareholders meeting, plaintiffs' proposed bylaw amendment was defeated. It received the support of 1,075,038 shares, or about 43 percent of outstanding shares eligible to be voted. Plaintiffs' proposal thus failed to obtain the requisite vote of two-thirds of eligible Lincoln shares as required by the current bylaws, as amended June 22, 1983.

21. To the extent that any of the foregoing findings of fact are deemed to be conclusions of law, they are hereby adopted as conclusions of law.

## CONCLUSIONS OF LAW

On the above and foregoing findings of fact, the Court makes the following conclusions of law:

1. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the Second Amended Complaint is brought pursuant to 15 U.S.C. § 78aa (Counts I, II, V and VI), 18 U.S.C. § 1965 (Count III), and the principles of pendent jurisdiction (Counts IV, VII and VIII).

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 78aa, in that the claims alleged herein arose in this district.

3. Plaintiffs purchased shares of Lincoln on June 24, 1983, before the effective date of the June 22, 1983 amendment which they challenge. The amendment did not become effective until June 30, 1983. Since plaintiffs' rights are directly and continuously affected by the June 22 amendment, they have standing to maintain this action.

4. Count IV of the Second Amended Complaint alleges that defendant directors breached their fiduciary duty to plaintiffs by amending the bylaws to require a two-thirds vote on shareholder initiated bylaw amendments. Plaintiffs argue that said amendment was enacted by defendants for the "purpose of perpetuating the defendant directors' control of Land of Lincoln ... and for the purpose of making it difficult or impossible for other shareholders to obtain minority representation on the Association's Board of Directors...." Second Amended Complaint, Count IV, ¶ 68.

5. Count VII of the Second Amended Complaint seeks a declaratory judgment that plaintiffs' cumulative voting amendment proposed at the October 12–13, 1983 special meeting is valid under the Illinois Savings and Loan Act.

6. Defendants' alleged unlawful amendment to Article XI of Lincoln's bylaws on June 22, 1983, as described in Count IV of the Second Amended Complaint, plaintiffs' proposed cumulative voting amendment as described in Count VII of the Second Amended Complaint, and defendants' alleged violations of federal law described in other counts of the Second Amended Complaint derive from a common nucleus of operative facts. Additionally, these claims are such that plaintiffs would ordinarily expect them to be tried in one judicial proceeding. Given the important policies of conservation of judicial energy and the avoidance of multiplicity of litigation, the Court exercises its discretion, pursuant to the doctrine of pendent jurisdiction, to accept jurisdiction over Counts IV and VII of the Second Amended Complaint. *See Rosado v. Wyman,* 397 U.S. 397, 405, 90 S.Ct. 1207, 1214, 15 L.Ed.2d 442 (1969); *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

7. Defendants contend that their decision to amend Lincoln's bylaws on June 22, 1983, was a prudent business judgment made in the interests of all shareholders.

Defendants rely on the deposition testimony of Randy E. Nonberg, counsel for Lincoln's underwriter, who on June 8, 1983, received a telephone threat from an attorney for 41 percent of Lincoln's shareholders that if the public offering were not stopped, these shareholders would call a special meeting for the purpose of removing all directors, electing new directors, and liquidating Lincoln. There was also a threat to cancel Lincoln's permit to issue securities in California. Defendants also rely on the oral testimony of Lincoln's president and director Thomas A. Kinst and director Robert J. Hajek and the deposition testimony of directors Ronald R. Drajka, John J. Lachajewski and Phillip R. Kasik that they enacted the bylaw amendments on the advice of their counsel, Charles Allen, in response to the threats by the California shareholders. Of particular concern to the board was the threat of liquidation which the directors believed would not be in the best interests of Lincoln, its stockholders or depositors.

8. According to the business judgment rule, corporate directors, acting without corrupt motive and in good faith, will not be held liable for honest errors or mistakes of judgment. *Lower v. Lanark Mut. Fire Ins. Co.,* 114 Ill.App.3d 462, 70 Ill.Dec. 62, 66, 448 N.E.2d 940, 944 (2nd Dist.1983); 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1039 (rev. perm. ed. 1975). In order to come within the ambit of the rule, however, directors must "be diligent and careful in performing the duties they have undertaken ... and they must not act fraudulently, illegally or oppressively or in bad faith." *Id.* 70 Ill.Dec. at 67, 448 N.E.2d at 945.

9. Under certain circumstances, directors of a corporation act in bad faith when they utilize corporate machinery for the purpose of perpetuating themselves in office. *See Holly Sugar Corp. v. Buchsbaum,* [1981–82 Transfer Binder] Fed.Sec.L. Rep. (CCH) § 98,366 at 92,238 (D.Colo. 1981); *Podesta v. Calumet Industries, Inc.,* [1978 Transfer Binder] Fed.Sec.L.Rep. (CCH) § 96,433 at 93,560 (N.D.Ill.1978); *Co-*

*alition to Advocate Public Utility Responsibility, Inc. v. Engels,* 364 F.Supp. 1202, 1206–07 (D.Minn.1973); *Schnell v. Chris-Craft Industries, Inc.,* 285 A.2d 437, 439 (Del.1971); *Lerman v. Diagnostic Data, Inc.,* 421 A.2d 906, 914 (Del.Ch.1980); *Petty v. Penntech Papers, Inc.,* 347 A.2d 140, 143 (Del.Ch.1975); *Condec Corp. v. Lunkenheimer Co.,* 43 Del.Ch. 353, 230 A.2d 769, 775–76 (1967). In order to prevail on this theory, however, a plaintiff must establish that the director's improper motive (perpetuating himself in office) was the "sole or primary purpose" of his conduct. *Panter v. Marshall Field & Co.,* 646 F.2d 271, 297 (7th Cir.1981). Merely introducing evidence that "a" motive of the director was to retain control is not sufficient to rebut the normal presumption that a director's actions are undertaken in good faith. *Id.* at 294.

10. Under the circumstances here, plaintiffs have not met their burden of proof that Lincoln directors acted carelessly in performing their duties. Upon learning of the threats from the California shareholders, director Kinst immediately sought the advice of lawyers and representatives of Dean Witter. At the June 15, 1983 meeting, several defensive measures were considered. The mere fact that defendants failed to personally contact the California shareholders does not negate the fact that defendants exercised reasonable care in responding to the threatened takeover and liquidation.

11. Furthermore, plaintiffs have failed to meet their burden of proof that the defendants' desire to perpetrate themselves in office was the "sole or primary purpose" of their conduct on June 22, 1983. Rather, the evidence shows that the June 22, 1983 bylaw amendments were made with the primary purpose to protect the interests of all shareholders and depositors by taking defensive action in response to a serious threat by substantial shareholders to call a special meeting to remove all directors, elect a new board and liquidate Lincoln. The purpose of this amendment was a proper corporate purpose. As the

Seventh Circuit stated in *Panter,* "by the very nature of corporate life a director has a certain amount of self-interest in everything he does." *Panter,* 646 F.2d at 294. Although control is always arguably "a" motive in any action taken by a director, plaintiffs in the instant case have failed to show that defendants' desire to retain control predominated their decision to amend Lincoln's bylaws on June 22, 1983.

12. Plaintiffs contend that the bylaw amendment to Article XI was not legally necessary to protect Lincoln from liquidation due to certain Illinois statutory protections. This contention is beside the point that the board, in fact, believed on June 22, 1983, that the amendment was necessary and had been so advised by counsel. As noted by the *Panter* court, "[i]t is precisely this sort of Monday-morning-quarterbacking that the business judgment rule was intended to prevent." *Panter,* 646 F.2d at 297. The directors' decision, as viewed on June 22, 1983, was a reasonable exercise of business judgment.

▮ 13. The June 22, 1983 amendment to Article XI of Lincoln's bylaws is valid.

14. Because the June 22, 1983 amendment is valid, plaintiffs' proposed cumulative voting bylaw was defeated at the October 12–13, 1983 special meeting because it failed to receive two-thirds of the votes eligible to be cast, as required by the June 22, 1983 bylaw amendment.

15. Because plaintiffs have failed to sustain their burden of proof, defendants Lincoln and its directors are entitled to judgment on Count IV of the Second Amended Complaint.

▮ 16. Further, Count VII of the Second Amended Complaint, which assumes that the June 22, 1983 bylaw amendment is invalid and seeks an order to require application of plaintiffs' proposed cumulative voting bylaw amendment at the October 26, 1983 annual meeting of Lincoln shareholders, is dismissed as moot because plaintiffs' proposed amendment did not receive the required vote of two-thirds Lincoln shares as required by Lincoln's bylaws.

17. The motion of defendant Paul A. Downing, Illinois Commissioner of Savings and Loan Associations, to dismiss is hereby granted for lack of subject matter jurisdiction.

18. To the extent that any of the foregoing conclusions of law are deemed to be findings of fact, they are hereby adopted as findings of fact.

CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is hereby ordered that:

1. Final judgment is hereby entered in favor of defendants and against plaintiffs on Counts IV and VII of the Second Amended Complaint.

2. Defendant Paul A. Downing, Illinois Commissioner of Savings and Loan Associations, is hereby dismissed as a party-defendant to this action.

3. Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court has determined that there is no just reason for delay and accordingly final judgment is hereby entered in favor of defendants and against plaintiffs as set forth above.

IT IS SO ORDERED.