**TRECO, INC. and Wisconsin Real Estate Investment Trust, Plaintiffs-Appellees, Cross-Appellants,**

**v.**

**LAND OF LINCOLN SAVINGS AND LOAN, Defendant-Appellant, Cross-Appellee.**

**Nos. 83–2704, 83–3062.**

United States Court of Appeals, Seventh Circuit.

Argued May 7, 1984.

Decided July 26, 1984.[*]

Concurring Opinion Nov. 14, 1984.

Fairchild, Senior Circuit Judge, filed concurring opinion.

---

[*] This appeal was originally decided by unreported order on July 26, 1984. 740 F.2d 972. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

Donald R. Harris, Jenner & Block, Chicago, Ill., for plaintiffs-appellees, cross-appellants.

Sherwin J. Markman, Hogan & Hartson, Washington, D.C., for defendant-appellant, cross-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Chief Judge.

On June 24, 1983, plaintiffs purchased approximately ten percent of the outstanding shares of Land of Lincoln Savings and Loan (Lincoln), an association chartered under Illinois law and regulated by the Federal Home Loan Bank Board and the Illinois Commissioner of Savings and Loan Associations. Six days later, on June 30, 1983, two amendments to Lincoln's bylaws became effective.[1] The amendment to bylaw Article XI provided that shareholders could amend Lincoln's bylaws only by "two thirds vote of the total votes eligible to be cast by the stockholders at a legal meeting called expressly for such purpose." *Treco, Inc. v. Land of Lincoln Savings and Loan Ass'n.*, 572 F.Supp. 1455, 1458 (N.D.Ill. 1983).[2] Bylaw Article III was amended by adding a provision that Lincoln directors

could be removed only for cause and by a vote of 75 percent of the outstanding shares at a meeting called expressly for that purpose.[3] The Board adopted these amendments, pursuant to advice of counsel and after evaluating alternative defensive measures, in response to a takeover and liquidation threat made by a group of West Coast shareholders of Lincoln on June 8. Lincoln was informed at the time of the threat that the group owned 41 percent of Lincoln's stock, 572 F.Supp. at 1457, Finding of Fact 7, but subsequently it appeared that the group in fact may have owned only 25 percent of the stock (Tr. 101).

In August 1983, plaintiffs filed suit against Lincoln and its directors in the United States District Court for the Northern District of Illinois, Eastern Division. In the First Amended Complaint, filed September 8, 1983, plaintiffs alleged their intent to solicit proxies to convene a special meeting of shareholders, before the October 26 annual shareholders meeting, to propose and enact a cumulative voting amendment to Lincoln's bylaws. Plaintiffs also alleged violations of federal security laws and an Illinois statute. District Judge Bua granted a preliminary injunction directing Lincoln to convene this special meeting on October 12 and notify all shareholders. *Treco Inc. v. Land of Lincoln Savings and Loan,* 572 F.Supp. 1447. (N.D.Ill. 1983) (reproduced at Def.App. A1–A7). At the October 12 meeting, the plaintiffs' cumulative voting proposal received support of about 43 percent of the outstanding shares eligible to be voted and therefore was defeated pursuant to the June bylaws. 572 F.Supp. at 1459, Finding of Fact 20.

On October 18, 1983, plaintiffs filed the Second Amended Complaint, which realleged the federal and state statutory viola-

---

1. The amendments were adopted by Lincoln's Board of Directors at the June 22, 1983 Board meeting.

2. Prior to adoption of this amendment, shareholders could amend the bylaws by a majority of votes cast at any legal meeting. Tr. 138. The bylaw provision that directors may amend the bylaws at any time by a vote of two-thirds of the full board was unchanged by the June 22 amendment.

3. Lincoln directors serve one-year terms. Def. App. 2. Before the Article III amendment was adopted, there was no bylaw provision governing the removal of directors from the Board.

tions in the First Amended Complaint and raised two new pendent state claims. Count IV sought a declaratory judgment that the directors' June 22 action, without shareholder approval, amending the bylaws to increase the number of votes necessary to change the bylaws, was invalid as a breach of fiduciary duty because, plaintiffs claimed, the amendment's purpose was to perpetuate director control and preclude minority representation on the Board. Count VII sought a declaratory judgment that the plaintiffs' proposed cumulative voting amendment is valid under Illinois law. Plaintiffs claimed that their amendment was supported by a majority of the votes cast at the October 12 special meeting and therefore was enacted under the pre-June 22 bylaws if the June 22 amendments are invalid. Plaintiffs joined Paul A. Downing, the Illinois Commissioner for Savings and Loan Associations, as a party-defendant for this Count.

The district court advanced the trial of the two counts on its calendar in an attempt to reach a decision before the October 26 annual meeting. 572 F.Supp. at 1457 n. 1. After a two-day trial on October 24 and 25, the district court found, *inter alia,* that

> the primary purpose of the June 22, 1983 bylaw amendments to Article XI and Article III was to protect the interests of all shareholders and depositors by taking defensive action in response to a threat to remove all directors and liquidate Lincoln. At the June 22, 1983, meeting, the directors reasonably believed that the threats of the California shareholders received on June 8, 1983, continued to be serious and potentially detrimental to the best interests of Lincoln and its shareholders.

*Id.* at 1458, Finding of Fact 16.

Relying on *Lower v. Lanark Mutual Fire Insurance Co.,* 114 Ill.App.3d 462, 70

Ill.Dec. 62, 448 N.E.2d 940 (1983), and *Panter v. Marshall Field Co.,* 646 F.2d 271 (7th Cir.1981), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631, the district court concluded that plaintiffs had "not met their burden of proof [in count IV] that Lincoln directors acted carelessly in performing their duties" nor had they proven that "defendants' desire to perpetuate themselves in office was the 'sole or primary purpose' of their conduct on June 22, 1983." *Id.* at 1460, Conclusions of Law 10, 11.[4] Based on these findings of fact and conclusions of law, on October 31, 1983, the district court entered final judgment for defendants and against plaintiffs on Counts IV and VII. At the same time, a Fed.R.Civ.P. 54(b) certification was issued, so that we have jurisdiction to review the judgment on the two counts.

Plaintiffs filed a timely appeal from the final order, challenging the district court's determinations as to Counts IV and VII.[5] Subsequent to this filing the remaining Counts (I through III, V–VI, and VIII) were voluntarily dismissed without prejudice pursuant to Fed.R.Civ.P. 41(a)(1) (Pl.Br. 3 n.*), but federal pendent jurisdiction remained valid, *Forest Laboratories, Inc. v. Pillsbury Co.,* 452 F.2d 621, 629 (7th Cir.1971), and indeed is not challenged by the parties.

We conclude that the district court's ruling for the defendants on Count IV was correct. Consequently, we need not consider plaintiffs' Count VII claims which have become moot since they incorrectly assume that the June 22 amendments challenged in Count IV are invalid.

Although plaintiffs claim to raise several issues under Count IV, their appeal really requires only that we determine what Illinois' common law business judgment rule is and whether it applies to this case. Plaintiffs' theory is that the Illinois busi-

---

**4.** The district court also concluded that its decision on Count IV rendered moot plaintiffs' Count VII claim and granted Illinois Commissioner Downing's motion for dismissal from the Count VII claim. 572 F.Supp. at 1461, Conclusions of Law 16, 17.

**5.** Originally plaintiffs also appealed Downing's dismissal as a party-defendant. However, in light of *Pennhurst v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 plaintiffs conceded in their reply brief that Downing was properly dismissed. Pl. Reply Br. 10.

ness judgment rule insulates a director's action from scrutiny only when the action is "solely in the interest of the corporation [because] [i]t is a breach of duty for the directors to place themselves in a position where their personal interest would prevent them from acting for the best interests of those they represent." *Shlensky v. South Parkway Building Corp.,* 19 Ill.2d 268, 278, 166 N.E.2d 793, 799 (1960) (quoting *Dixmoor Golf Club, Inc. v. Evans,* 325 Ill. 612, 616, 156 N.E. 785, 787 (1927)) (emphasis omitted). Plaintiffs contend that this statement of the business judgment rule is inconsistent with Delaware's business judgment rule, which is applied in *Panter, supra,* relied on by the court below. Delaware's rule insulates a director's action unless plaintiff shows that an impermissible motive, such as perpetuation of director control, was the "sole or primary purpose" for the action. *Panter,* 646 F.2d at 297 (citing *Cheff v. Mathes,* 41 Del.Ch. 494, 199 A.2d 548 (1964)). Because the district court did not expressly find that Lincoln's directors' June 22 amendment was solely in the interests of Lincoln and apparently assumed that the directors were partially motivated by self-interest, plaintiffs contend that the district court erred in concluding that the amendment was valid.

■ The corporate law of the state of incorporation is controlling with respect to the fiduciary duties of its directors as well as other internal corporate affairs. See *First National City Bank v. Banco Para El Comercio Exterior De Cuba,* 462 U.S. 611, 103 S.Ct. 2591, 77 L.Ed.2d 46; *Paulman v. Kritzer,* 74 Ill.App.2d 284, 219 N.E.2d 541 (1966), affirmed, 38 Ill.2d 101, 230 N.E.2d 262 (1967). Therefore, the actions of Lincoln's directors must be reviewed in light of Illinois' business judg-

ment rule.[6] In determining what the Illinois rule is, however, this Court is not required to apply mechanically the Illinois Supreme Court's last ruling, see *Warner v. Gregory,* 415 F.2d 1345 (7th Cir.1969), particularly where, as here, significant developments in the case law have since taken place. Instead, we may determine the present status of Illinois law. *Id.*

■ Under Illinois' common law business judgment rule, "corporate directors, acting without corrupt motive and in good faith, will not be held liable for honest errors or mistakes of judgment, and a complaining shareholder's judgment shall not be substituted for that of the directors." *Lower v. Lanark Mutual Fire Insurance Co.,* 114 Ill.App.2d 462, 467, 70 Ill.Dec. 62, 66, 448 N.E.2d 940, 944 (1983) (citing, *inter alia, Shlensky v. Wrigley,* 95 Ill.App.2d 193, 237 N.E.2d 776 (1968) (applying Delaware law)). This statement in *Lower* is essentially a restatement of the common law business judgment rule generally applied in most states (see 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1039 (rev. perm. ed. 1975), cited with approval in *Lower, supra,* 114 Ill.App.2d at 467, 70 Ill.Dec. 62, 448 N.E.2d 944)). The rule applies to protect directors who have performed diligently and carefully and have not acted fraudulently, illegally or otherwise in bad faith. *Lower, supra,* 114 Ill. App.2d at 467, 70 Ill.Dec. 62, 448 N.E.2d 944.

In *Lower,* directors who had settled a dispute with the corporation's secretary-treasurer were sued for breach of fiduciary duty. The trial court granted the directors' summary judgment motion, on the basis that their actions were protected under the Illinois business judgment rule because

6. Plaintiffs urge that the business judgment rule should be applied only in actions for money damages and therefore should be inapplicable in this action seeking a declaratory judgment. But plaintiffs do not cite, and our research does not disclose, cases from Illinois or any other jurisdiction which impose this limitation on the scope of the business judgment rule. Indeed, the emphasis with which an Illinois court recently stated that "a complaining shareholder's

judgment shall not be substituted for that of the directors" who have acted in good faith, *Lower v. Lanark Mutual Fire Insurance Co.,* 114 Ill. App.3d 462, 467, 70 Ill.Dec. 62, 66, 448 N.E.2d 940, 944 (1983), indicates that Illinois would apply the business judgment rule in actions seeking various kinds of remedies. Consequently, we reject plaintiffs' invitation to limit the Illinois rule.

there was no real question about their good motive. The Illinois appellate court reversed on the basis that there was a question of fact about the directors' motive, so that the case could not be resolved on summary judgment. However, the appellate court adopted the trial court's interpretation of the business judgment rule and did not require, as plaintiff mistakenly contends, that the Illinois rule protects only directors whose actions were solely for corporate purposes.

After reviewing the facts of this case, developed at a full trial, in light of the business judgment rule stated in *Lower*, the district court found that (1) the directors reasonably believed the West Coast threat was serious, (2) the threat's implementation would be detrimental to Lincoln and its shareholders, (3) the defendants' amendments were adopted primarily to defend against the threat and on advice of counsel after consideration of alternatives, 572 F.2d at 1458, and (4) the directors' action was a reasonable exercise of business judgment. *Id.* at 1461. Since the district court's findings represent a reasonable interpretation of the evidence, especially in light of the district court's opportunity to judge the credibility of the witnesses, Fed.R.Civ.P. 52(a), they certainly are not clearly erroneous.[7] Thus, even assuming, as plaintiffs suggest, that the findings are mixed determinations of fact and law (Reply Br. 1–2), these findings may be accepted. *Leigh v. Engle*, 727 F.2d 113, 124 (7th Cir.1984).

Plaintiffs do contend, however, that the Illinois business judgment rule may be applied to protect only directors who "exercise their best care, skill and judgment in the management of the corporate business *solely in the interest of the corporation.*" *Shlensky v. South Parkway Building Corp.*, 19 Ill.2d 268, 278, 166 N.E.2d 793, 799 (1960) (quoting *Dixmoor Golf Club,*

*Inc. v. Evans*, 325 Ill. 612, 616, 156 N.E. 785, 787 (1927) (adding emphasis)). The district court did not expressly find that Lincoln's directors acted solely in Lincoln's interest. Instead, without expressly determining whether the amendments were at all motivated by self-interest, the district court concluded that the directors were protected by the business judgment rule because self-interest was not shown to be the "sole or primary" reason the amendments were adopted. 572 F.Supp. at 1460. In reaching this conclusion, the district court relied on *Panter v. Marshall Field Co.*, 646 F.2d 271 (7th Cir.1981), certiorari denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631, a case involving a Delaware corporation and therefore decided under Delaware law. Plaintiffs claim that the Delaware law, as explicated in *Panter*, is inconsistent with Illinois' law and therefore the district court decision must be reversed.

■■■ *Panter's* explication of Delaware law is an application of the business judgment rule to a factual situation not yet encountered by Illinois courts, *i.e.*, directors' defensive actions against threats to take over or liquidate a corporation. Courts that have encountered this issue generally have recognized that directors faced with such threats may be confronted with a difficult dilemma. If they determine in good faith that the threatened action is adverse to the corporation's interest, they have a duty to resist the action forcefully. See, *e.g.*, *Heit v. Baird*, 567 F.2d 1157, 1161 (1st Cir.1977). But successful resistance will likely have the collateral effect of perpetuating the incumbent directors' control, *id.*, so that a director's self-interest in maintaining control may appear to be one of the purposes of the resistance. As a result, the courts generally have determined that the business judgment rule continues to apply to insulate

---

7. Plaintiffs have not contended that the findings are clearly erroneous. They claim that defendants did not exercise independent business judgment in evaluating the threat, that the threat was not real, and that the amendments had no effect of forestalling the liquidation threat.

These are not claims that the findings are erroneous but arguments that the evidence would support findings different from those made by the district court and are therefore rejected as not within the scope of appellate review. Fed. R.Civ.P. 52(a).

directors' actions in challenge-to-control contexts, despite the directors' apparent self-interest, unless self-interest was the "sole or primary purpose" for the directors' resistance. *Panter,* 646 F.2d at 292. See also, *Crouse-Hinds Co. v. Inter-North, Inc.,* 634 F.2d 690, 701–703 (2d Cir. 1980) (New York law); *Johnson v. Trueblood,* 629 F.2d 287, 293 (3d Cir.1980), certiorari denied, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (Delaware law); *Schilling v. Belcher,* 582 F.2d 995, 1004 (5th Cir. 1978) (Florida law); *Heit, supra,* 567 F.2d at 1161 (Massachusetts law); *Cummings v. United Artists Theatre,* 237 Md. 1, 204 A.2d 795 (1964) (Maryland law).[8]

Although the Illinois Supreme Court has not yet encountered this issue, it is apparent that they would endorse this statement of the rule which has been adopted in so many jurisdictions. Illinois courts have often been guided by the decisions of other jurisdictions in making corporate law regarding directors' fiduciary duties and the business judgment rule. In *South Parkway Building Corp., supra,* itself, the case which plaintiffs strenuously claim requires us to disavow the district court's reliance on *Panter,* the Illinois Supreme Court decided to follow one of two contradictory Illinois precedents, largely because it was "consistent with the rule followed by the overwhelming majority" of jurisdictions. 19 Ill.2d at 281, 166 N.E.2d at 800. More recently, in the same vein, the Illinois Appellate Court supported its explication of the Illinois business judgment rule by reference to Delaware law (*Shlensky v. Wrigley,* 95 Ill.App.2d 173, 237 N.E.2d 776 (1968)) and generalized statements of corporate law (Fletcher's Cyclopedia of the Law of Private Corporations). *Lower,* 114

Ill.App.3d at 467, 70 Ill.Dec. 62, 67, 448 N.E.2d 940, 945. Given this well-established willingness of Illinois courts to make other jurisdictions' recent determinations part of Illinois corporate law, it is clear that Illinois would adopt the rule explicited in *Panter* and the other cases cited *supra* to decide the issue of director liability for conduct defending against a takeover and liquidation threat, an issue not before the Illinois Supreme Court when it decided *South Parkway* in 1960 and *Dixmoor* in 1927. Consequently, the district court could properly apply the *Panter* "sole or primary purpose" standard in deciding the instant case. See *Warner v. Gregory,* 415 F.2d at 1345 (7th Cir.1969).

The final order of the district court is affirmed.[9]

FAIRCHILD, Senior Circuit Judge, concurring.

I concur in affirmance.

I do, however, question whether the rubric of the business judgment rule is analytically appropriate to this case. In Count IV, plaintiffs do not seek damages from the directors for injury to the corporation caused by a breach of the directors' duty. They ask the court to invalidate a bylaw which required more votes for a bylaw proposed by plaintiffs than plaintiffs could muster.

The challenged amendment is not unusual or extreme, and the board of directors had authority to enact it. Plaintiffs could succeed only if they showed the directors' votes were sufficiently tainted to be invalid. It is true that the challenged bylaw limited to some extent the voting power of the shares plaintiffs purchased after the adoption but before the effective

---

**8.** Where director self-interest is shown to be the sole or primary purpose for the directors' action, the protection of the business judgment rule has been withheld, and directors have been required to establish the fairness and reasonableness of their actions. See *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255 (2d Cir.1984). In *Norlin,* the court determined that directors responded to a takeover threat and created an Employee Stock Option Plan and Trust "solely as a tool of management self-perpetuation." At

266. Since the district court found, in the case before us, that the primary purpose of the Treco board's action was to protect the shareholders' and depositors' interests, there is no basis for withholding business judgment protection from them.

**9.** Because we conclude that the June 22 bylaw amendments are valid, we do not reach defendants' claim in consolidated appeal No. 83–2704.

date of the bylaw. This bylaw was accompanied by another which restricted removal of a director during his elected term. I do not view these facts as even a threshold showing of invalidity.